UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

Joseph S. Barone

                Plaintiff,

        Civil Action No._____

-against-

        JURY TRIAL DEMANDED

UNITED STATES OF AMERICA,
United States Department of Justice,
Federal Bureau of Investigations,
Federal Bureau of Prisons,
Special Agents Michael **Gaeta, Gregory** Maccelli,
and Michael Trombetta in their official capacity
as FBI agents and in their individual capacity,
AUSA Miram Rocca, and Bureau of Prisons (BOP)
and
City of New York
New York Police Department,  and
"John Doe, Officers 1-5 unidentified police officers employed by the
New York City Police Department, in their
official capacity as police officers,
and in their individual capacity.

                Defendants
-----------------------------------------------------X

## COMPLAINT FOR DAMAGES
### FEDERAL CIVIL RIGHTS STATUTES

    No man in this country is so high that he is above the law.  No officer of the law may set that

law at defiance with impunity. All the officers of the government from the highest to the lowest,

are creatures of the law, and are bound to obey it. *United States v. Lee U.S. 196, 220, (1882)*

### JURISDICTION

1.  The jurisdiction of this Court is invoked under Title 28 U.S.C. § 1331, §1367 (a) as well as

§1343 (3) and (4).  This action arises, in part, under the Federal Tort Claims Act (28 USC § 2671

at. seq. and 28 USC USC § 1346, and **§** 1335 **as** herein more fully appears. Pursuant to 28 USC §

2675, tort claims were presented to the U.S. Department of Justice and the Federal Bureau of

Investigations (FBI)and Federal Bureau of Prisons (BOP). Said agencies have denied stated

claims. Plaintiff therefore has exhausted their administrative remedies. Additional jurisdiction is

also found in 42 **USC §** 1981, § 1983, §   1985 and  § 1986 since the City of New York and the

New York Police Department, acting under color of state law and pursuant to their authority, in

violation of Plaintiff's rights secured by the Civil Rights Act of 1871, are included as defendants.

2.  This case is brought, in part, pursuant to, the United States Constitution and its Amendments,

including, but not limited to the Fourth, Eight, and Fourteenth Amendment to the U.S.

Constitution and the case of *Bivens v. Sixth Unknown Agent of the Federal Bureau of Narcotics*,

403 U.S. 388 (1971), and under the laws of the State of New York.

3. This action is timely pursuant to 28 USC § 2401 (b) in that it was presented to the appropriate

agencies on June 6th, 2011 and within two years of accrual and this action was filed within six

months upon the expiration time the agency was required to answer but never did.

4.  42 U.S.C. § 1997e, the Prison Litigation Reform Act, does not apply to this action in that the

plaintiff has been released from jail prior to the filing of this complaint.

### VENUE

5.  Venue in this action is properly situated in the United States District Court for the Southern

District of New York , pursuant to 28 U.S.C.  § 1391 (b) and (e).

### PARTIES

6.  Plaintiff Joseph S. Barone is an individual residing at 1333 A North Avenue #108 New

Rochelle New York 10804.

2

7. The United States of America is the appropriate defendant under the Federal Tort Claims Act and was at all times material to this complaint the employer of Special Agents Michael Ghator, Gregory Maccelli, Michael Trombetta, and AUSA Miram Rocca.

8. Defendant United States Department of Justice is an agency of the United States with its headquarter Central Office located in Washington D.C.

9.   Defendant Federal Bureau of Investigation is a federal agency of the United States with its headquarter office located in Washington D.C.

10.   Defendant City of New York (NY**C**) was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York. Its agents, servants and employees operated, maintained and controlled the Police Department of the City of New York, including all the officers thereof.

11.  Defendant New York Police Department was established by defendant NYC and is maintained by that defendant as a constituent department or agency.

12. Defendants,  Police officers "John Doe, 1-5" are unidentified police officers employed by the New York Police Department, in their official capacity as police officers, and in their individual capacity, hereinafter referred to as defendants "John Doe" were operating under the employ of the New York City Police Department.

## STATEMENT OF FACTS

13. That on or about January 9th, 2009, at approximately 1:00pm of that day, the Plaintiff while lawfully situated at his home in New York was wrongfully charged with a crime to commit murder for hire and conspiracy to commit murder, and was wrongfully and falsely arrested; and

thereafter, wrongfully and falsely detained and imprisoned, by state police officers and federal agents acting in concert.

14. That Plaintiff was not guilty of any crime, was wrongfully and falsely arrested, and then wrongfully and falsely detained, imprisoned and jailed for 19 months while awaiting trial.

15. That On July 29th 2011, a federal jury acquitted Plaintiff of all the criminal charges against him.

16. That this story started approximately 19 year ago when Plaintiff Joseph S. Barone decided to work, in good faith, for the Federal Bureau of Investigation (FBI) as a confidential informant.

17. Plaintiff was accepted as an informant and started gathering evidence and information in an effort to help the government take down organize crime figures associated, inter alia, with all La Cosa Nostra (LCN) members.

18. In those long years working in that capacity, the FBI issued monthly progress reports stating that Plaintiff's information was valuable to the FBI and that Plaintiff regularly kept the FBI informed of the criminal activities of LCN subjects and their associates.

19. Those FBI reports also stated that Plaintiff was classified as a top, Tier II informant and was very reliable warranting remuneration.

20. In one report dated 12/05/2005 the FBI stated that Plaintiff helped the FBI identify 48 subjects of interest to the FBI and that Plaintiff kept the FBI abreast of the criminal activity of those close to Plaintiff.

21. In another report dated November 21, 2008 and issued by FBI Agent Michael Trombetta, six weeks prior to the Plaintiff's arrest, the report stated that Plaintiff had provided information to the FBI for over eighteen years and that Plaintiff's information has been both reliable, timely, and

4

has resulted in numerous arrests and convictions of violent criminal offenders; the report further states that Plaintiff's accomplishments are well documented and that Plaintiff has never been known to provide inaccurate information.

22. In one case, which is undisputed, Plaintiff provided valuable information that prevented the murder of a sitting federal judge and an Assistant United States Attorney.

23. Moreover, the government had never complained about Plaintiff's methods of informing and gathering information which often times put Plaintiff in harm's way.

24. According to the government's written evaluations of the Plaintiff's performance, the government had complete faith in the Plaintiff's information and allowed him to gather information using his own methods; these methods were so effective and genuine that the government never required nor ever requested that the Plaintiff wear a wire or use other government enforced tactics to obtain and substantiate the information being provided. Nowhere in the Plaintiff's government file of approximately 19 years undercover and before January 9, 2009 is there any indication that the Plaintiff was ever disingenuous or unlawfully motivated with the efficiency, effectiveness and accuracy of his methods or provision of information.

25. Then, on January 9, 2009 this very same government that benefited from Plaintiff's services and undercover work for approximately 19 years decided it was time to arrest Plaintiff while he was still an active informant.

26. In a new twist, the FBI now wanted Plaintiff to change his method of gathering information and ordered Plaintiff to make monitored calls against his will to crime figures of the Genovese crime family and other LCN members.

5

27. Plaintiff complained about this new method and tried to reason with the FBI that this would only comprise his identity and raise suspicion since Plaintiff had never called these individuals, nor would they talk to him about something illegal over a live wire. Fearing for his safety, Plaintiff refused to make such calls and the government subsequently indicted Plaintiff on bogus charges. Plaintiff was charged with racketeering, murder for hire, and conspiracy pursuant to Title 18 U.S.C. § 1958.

28. The government's foundation to bring bogus charges against Plaintiff allegedly came from information provided to the government by an unscrupulous individual working for the NYPD as an informant named Michael Cooks in November of 2008. According to federal agents and NYPD testimony the investigation was a total of 3 days, the 3rd day being on which day Plaintiff was arrested.

29. Michael Cooks, who admitted during trial to having an extensive criminal background including shooting people, stated that he had been commissioned by Plaintiff to travel to Connecticut for the purpose of gathering information on an individual to be murdered by Cooks for Plaintiff.

30. In late summer or early fall of 2008, Michael Cooks travelled to Connecticut and made a video recording of the residence of the would-be-victim. Cooks then showed the videotape to Plaintiff who in turn explained that it would be impossible to "do the job." Thereafter, Plaintiff did not have any further contact with Cooks regarding the alleged murder.

31. However, the government and the NYPD in their overzealous efforts to make a federal case against Plaintiff took their first step in *bad faith* against Plaintiff and worked out a deal with Cooks and the NYPD to entrap Plaintiff who was still an active and effective Tier II informant.

32. In early January of 2009, Cooks, at the direction of the FBI and the NYPD, would make contact again with Plaintiff in order to engage him in taped telephone conversations to elicit incriminating statements about the previous purported murder for hire plot.

33. The NYPD and the FBI's strategy was for Cooks to present a sound plan for carrying out the murder which Plaintiff had earlier said was impossible, but in reality Plaintiff had *no intention* to commit such crime as he was still an active informant. This was proven during Plaintiff's trial.

34. Cooks stated to Plaintiff that he had found someone to do the job, and that he needed money urgently and a pistol from Plaintiff for the job. While Plaintiff indulged Cooks in these conversations, as he was authorized by the FBI to do, he made no effort to carry out **Cooks'** requests in furtherance of the murder. Nor did Plaintiff give Cooks the money or the pistol Cooks requested.

35. Despite this, the FBI and the NYPD agreed with each other to continue to pursue Plaintiff and subsequently arrested him by a task force that included the FBI, NYPD and ICE agents.

36. Plaintiff was transported to the Metropolitan Detention Center in Brooklyn, New York. While there, under the direction of the FBI he was thrown into the Special Housing Unit of the jail and remained incommunicado for 19 months without access to the telephone, law library, **proper medical care, commissary, socialization and recreational activities.**

37. To make matters worse, Plaintiff's name was revealed in the news papers as an "informant" for the FBI placing his life in imminent physical danger inside prison and as well as outside.

38. Plaintiff was charged in a Two Count Indictment for Conspiracy for Murder and Conspiracy to Commit Murder for Hire. *See United States v. Joseph S. Barone*, Case No. 09-CR-91(NRB)

FIRST CAUSE OF ACTION
ON BEHALF OF PLAINTIFF PURSUANT TO THE FTCA

39. Plaintiff repeats, reiterates and realleges each and every allegation contained in the paragraphs 1-38, with the same force and effect as is more fully set forth herein.

40. Under the FTCA the defendant United States is liable for the above describe actions of the FBI employees/officers as they were acting in concert within the scope of their employment.

41. The Plaintiff's rights have been violated in that the Plaintiff was imprisoned on false charges in violation of the Plaintiff's right due to the negligence of the defendants Michael Ghator, Gregory Maccelli, Michael Trombetta, and Miram Rocca. The Plaintiff was then kept in isolation for 19 months at the Metropolitan Detention Center at the request of the defendants.

42. By reason of the negligence and careless acts of defendants, Plaintiff was caused to experience psychological and physical pain and suffering, incur undo expenses, lose earnings, lose property, suffer damage to his reputation and defendants placed Plaintiff and his loved ones in harm's way by informing the media that he worked as an informant for the FBI and in other respects, was damaged.

SECOND CAUSE OF ACTION
ON BEHALF OF PLAINTIFF PURSUANT TO THE SUPREME COURT RULING IN
*BIVENS V. SIX UNKNOWN AGENTS*

43. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully set forth herein.

44. As a result of Defendants' aforementioned conduct,  Plaintiff was falsely arrested and imprisoned by the defendants. As a direct result of defendants' action and conduct, Plaintiff was deprived of rights, privileges and immunities under the Fourth and Fifth Amendments of the United States Constitution being more particular Plaintiff's rights: to be secure in their person,

8

papers, and effects against unreasonable searches and seizure; not to be deprive of life, liberty, and property without due process of law; the right to counsel when questioned; and the right to the equal protection of the laws secured by the Fourteenth Amendment to the Constitution of the United States.

45. By reason of the negligence and careless acts of defendants, Plaintiff was caused to experience psychological and physical pain and suffering, incur expenses, lose earnings, lose property, suffer damage to his reputation and in other respects, was damaged.

THIRD CAUSE OF ACTION
**42 U.S.C § 1983 Against Individual State Actors**
CONSPIRACY TO DEPRIVE PERSONS OF EQUAL PROTECTION OF THE LAWS

46. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully set forth herein.

47. The defendants City of New York, NYPD and Police Officers "John Doe 1-5" did conspired with the FBI and the U.S. Department of Justice and perhaps with others currently unknown to this Plaintiff, to deprive Plaintiff of equal protection of the laws and equal privileges and immunities under the laws, as further set forth herein. As a result of Defendants' conduct, Plaintiff was subject to an illegal, improper, and false seizure and arrest by the Defendants and taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated, and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege, or consent. Such conduct constitutes false arrest under the laws of the State of New York pursuant to 28 USC §1376.

FORTH CAUSE OF ACTION
Conspiracy to interfere with civil rights and
Cause of Action Under Bivens and 1983

**48.** The conspirators committed acts in furtherance of the conspiracy which included obstructing justice, intimidating party,  arresting Plaintiff when they knew he was an active, reliable and productive Tier II informant and falsely testifying in open court that Plaintiff had been de-activated as an informant prior to his arrest. Records clearly show that at the time NYPD was using Michael Cooks as an informant against Plaintiff, they knew that Plaintiff was an active informant for approximately19 years and was a reliable informant yet sought to fabricate charges against Plaintiff by bringing false information before a federal grand jury that indicted Plaintiff.

49. FBI Agent Vincent Presutti stated that he was Plaintiff's handler for 18 years and that he was authorized to engage in discussion of criminal activity for which he was charged. However, during trial FBI Agent Michael Trombetta, who was Plaintiff's handler at the time of his arrest, testified that Plaintiff was not authorized to engage in criminal discussions.

50. FBI Agent Michael Gaeta stated that he was unaware of Plaintiff's status as a confidential informant when court records and testimony revealed that he did in fact know of Plaintiff's status. His objective in the conspiracy was to secure a conviction at any cost.

51. By the aforesaid actions of defendants constituted false imprisonment against Plaintiff.  The government had the opportunity to know Plaintiff well enough to see that he was not the type of individual that would commit the crimes he was charged with. The government's own evaluations and status reports repeatedly acknowledge this over their approximate 19 year relationship with the Plaintiff.  The actions taken also constituted an unlawful invasion of plaintiffs' privacy, false arrest and abuse of process and malicious prosecution, all in violation of

the laws of the State of New York and of the United States Constitution, which this court may adjudicate as pendant to the other four causes of action.

FIFTH CAUSE OF ACTION
MALICIOUS PROSECUTION
and
CRUEL AND UNUSUAL PUNISHMENT

52. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully set forth herein.

53. By the aforesaid improper and malicious prosecution and activities even though Plaintiff had committed no crimes, and despite the defendants knowing and/or possessing information that Plaintiff had not committed the subject crime; and that defendant could not evince any facts or circumstances which could lead a reasonable prudent person to believe that Plaintiff was guilty of the charges committed.

54. That the wrongful and false charges, arrest, detaining, jailing, striping, imprisonment and/or prosecution of the Plaintiff, by the defendants, U.S Department of Justice, FBI, NYC, and NYPD including "John Doe 1-5" and its servants mentioned above, vicariously, and by and through said agents, servant, employees and/or representatives, constituted an intentional, willful, malicious, reckless and/or grossly negligent disregard for and/or deliberate indifference to Plaintiff's rights, as well as Plaintiff's physical and emotional well-being and violation of his Eight Amendment for cruel and unusual punishment.

## SIXTH CAUSE OF ACTION
## NEW YOUR MUNICIPALITY LIABILITY

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in the prior paragraphs with the same force and effect as is more fully set forth herein.

56. The acts complained of herein were carried out by the Defendants Police Officers John doe 1-5 in their official capacity as police officers, employees and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department.

57. Prior to May 13, 2010, NYC and NYPD develop and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of persons in NYC, which caused the violation of Plaintiff.

58. It was the policy and/or customs of NYC and NYPD to inadequately and improperly train and supervise its informants, police officers, including the defendants officers, thereby failing to adequately discourage further constitutional violation on the part of its officers.

59. It was the poor and sloppy policy and/or custom of NYC and NYPD to inadequately and improperly investigate allegations provided by unscrupulous informants, seeking monetary rewards at any cost, that lead to the false arrest of an innocent person-such as Plaintiff.

60. It was the poor and sloppy policy and/or custom of NYC and NYPD to inadequately and improperly investigate with other state and federal law enforcement agencies to determine if a particular target of interest is an undercover police officer and/or active and operating informant before arresting him. Such conduct caused the arrest and imprisonment of Plaintiff who was an active Tier II informant for 19 years.

61. The foregoing customs, policies, usages, practices, procedures, and rule of NYC and NYPD constituted deliberate indifference to the safety, well-being, and constitutional rights of Plaintiff.

62. As a result of the described policies and customs, police officers of the NYPD, informants, including the defendant officers, believe that their actions would not be monitored by supervisory officers and that their own misconduct would not be investigated or sanctioned, but instead would be tolerated.

## DAMAGES

63. As further result of the indictment, Plaintiff Joseph S. Barone has been unable to find safe employment and earn a living. Plaintiff's reputation has been damaged, and he has been forced to live in hiding with constant fear of retaliation by mob members.

64. The ordeal of investigation, indictment and trial has exacted a terrible physical and emotional toll on the Plaintiff. Shortly after being arrested and indicted, Plaintiff Joseph S. Barone was treated for symptoms which were subsequently diagnosed as an acute stress reaction which caused him to be hospitalized in US Marshal Custody for irregular heartbeats. Since the investigation and pretrial incarceration, Plaintiff has suffered from a severe STAPH infection which has led to reoccurring infections such as folliculitis, eye, ear, nose and throat infections and oral infections as well as chronic insomnia combined with persistent and constant migraines. He is currently under physician's care and taking psychiatric medications for Post-Traumatic Stress Disorder (PTSD).

## REQUEST FOR RELIEF

65.  WHEREFORE, Plaintiff request this Court to assess compensatory damages against each defendant, jointly and severally, in at least the following amounts, and which amounts will be proven in detail at trial of this action:

   a)  Lost Earnings,
   b)  Personal suffering, humiliation and emotional distress, illness and permanent scaring; and
   c)  Uncompromising and perpetual decrease in quality of life due to imminent danger of death or serious injury to Plaintiff and his loved ones
   d)  An amount adequate to compensate Plaintiff for defense costs incurred during the investigation and trial,
   e)  In order to deter defendants and others from engaging in such unlawful and unconstitutional activities, Plaintiffs further request punitive damages against
   f)  each defendant, plus cost and attorney's fees, and any other and further relief as the Court may deem just and equitable, for a total amount of 20 million dollars or as determined by the Court.

## DEMAND FOR JURY TRIAL

66.  Plaintiff hereby demands a trial by jury of all issues so triable in this cause of action.

Respectfully submitted

*Joseph Barone*

Joseph S. Barone-Pro se.
C/o Jose a. Muniz, Esq.
277 Broadway, Suite 108
New York, NY  10007
(212) 964-3736

14