UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
JOSEPH S. BARONE,
                              :     **REPORT & RECOMMENDATION**
            Plaintiff,
                              :     **12 Cv. 4103 (LAK) (MHD)**
     -against-
                              :

UNITED STATE OF AMERICA et    :
al.,
                              :
            Defendants.
------------------------------X

8/21/14

**To the Honorable Lewis A. Kaplan, U.S.D.J.:**


     In 2011, plaintiff Joseph S. Barone was acquitted in federal court on charges that he had participated in a murder-for-hire plot. In the wake of that acquittal, he filed this lawsuit, originally on a pro se basis. He asserts a variety of claims against numerous federal and New York City municipal actors, premised principally on theories of false arrest and malicious prosecution.


     The federal and municipal defendants have moved to dismiss all of the claims against them. For the reasons that follow, we recommend that both of their motions be granted.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff alleges that in or about 1993 he began working for the Federal Bureau of Investigation ("FBI") as a Mob informant. (Compl. ¶ 4). He alleges that he was classified as a "top, Tier II informant" and, over a period of nineteen years, earned a reputation as a reliable and valuable source of information concerning La Cosa Nostra and associated organized-crime figures. (See id. ¶¶ 16-24).

According to the complaint, in or about early 2009, the FBI asked plaintiff to make monitored phone calls to members of the Genovese crime family (id. ¶ 26), but he refused on the ground that attempting to discuss unlawful conduct over the phone was counter to the Mob's normal practice and would immediately raise suspicions that plaintiff was an informant, thereby placing his life in danger. (See id. ¶ 27). Plaintiff suggests that because of his refusal to make the monitored calls requested by the FBI, he was arrested and falsely charged with racketeering, murder for hire, and conspiracy. (Id. ¶¶ 27, 28).

The complaint alleges that, in November 2008, Michael Cooks, an informant for the New York City Police Department ("NYPD"), told the police that "he had been commissioned by Plaintiff to

2

travel to Connecticut for the purpose of gathering information on an individual to be murdered by Cooks for Plaintiff." (Id. ¶ 29). The complaint further alleges that "[i]n late summer or early fall of 2008, Michael Cooks travelled to Connecticut and made a video recording of the residence of the would-be-victim." (Id. ¶ 30). Plaintiff asserts that when Cooks showed him the videotape, he advised Cooks that it would be "impossible to 'do the job.'" He further alleges that in early January 2009 "Cooks, at the direction of the FBI and the NYPD[, made] contact again with Plaintiff in order to engage him in taped telephone conversations to elicit incriminating statements about the previous purported murder for hire plot." (Id. ¶ 32). He insists, however, that "in reality Plaintiff had no intention to commit such a crime as he was still an active informant" (id. ¶ 33 (emphasis in original)), and that he merely "indulged" Cooks in conversations about the planned murder, "as he was authorized by the FBI to do," but made no effort to carry out the crime and declined to provide Cooks with the money and weapon that he had requested. (See id. ¶ 34).

Plaintiff alleges that on or about January 9, 2009 he was arrested by "a task force that included the FBI, NYPD and ICE agents." (Id. ¶¶ 13, 25, 35). He alleges that he was transported to the Metropolitan Detention Center ("MDC"), a federal detention facility in Brooklyn, New York, where, "at the direction of the

3

FBI," he was placed in the Special Housing Unit ("SHU") "and remained incommunicado for 19 months without access to the telephone, law library, proper medical care, commissary, socialization and recreational activities." (Id. ¶ 36). Plaintiff also complains that after his arrest his role as an FBI informant was revealed to, and publicized by, newspapers, putting his life at risk, presumably from retribution by the Mob. (Id. ¶ 37). In July 2011, plaintiff was tried before the Honorable Naomi Reice Buchwald, U.S.D.J., and a jury. (Id. ¶ 15, 38). The jury acquitted him on the murder-for-hire charge and hung on the conspiracy charge. The court subsequently entered an order of nolle prosequi on the conspiracy charge, at the request of the Government. (See Tinio Decl. Ex. H p. 2); cf. Narumanchi v. Foster, 2006 WL 2844184, *3 (E.D.N.Y. Sept. 29, 2006)("the trial and jury verdict in the related action, are… subject to judicial notice").

Plaintiff filed his complaint in this case on May 23, 2012.[1] The complaint names as defendants the United States of America; the United States Department of Justice ("DOJ"); the FBI; the Federal Bureau of Prisons ("BOP"); FBI Special Agents Michael

---

[1] The complaint is signed "Joseph S. Barone – Pro se[,] c/o Jose [A]. Muniz, Esq." (Compl. 14). We therefore treat his complaint as a pro se pleading. We note, however, that plaintiff was represented by counsel during the briefing of the current motions.

4

Gaeta, Gregory Miceli,[2] and Michael Trombetta, in their official and individual capacities; Assistant United States Attorney ("AUSA") Miriam Rocah[3,4]; the City of New York; the NYPD; and five John Doe police officers, in their official and individual capacities. (Compl. 1).

The complaint sets forth six causes of action. First, plaintiff claims that the United States is liable under the Federal Tort Claims Act ("FTCA") because of the negligent conduct of the defendant FBI agents and AUSA Rocah with respect to his arrest and prosecution, as well as their request that plaintiff be held in the SHU at the MDC jail, which purportedly caused him various physical, psychological, and economic injuries. (See Compl. ¶¶ 39-42).

Second, plaintiff invokes the Supreme Court's ruling in Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), in claiming that the defendants -- he does not specify which ones -- deprived him of "rights, privileges and

---

[2] Plaintiff incorrectly spells defendant Miceli's surname as "Maccelli." (See Fed. Defs.' Mem. of Law 1 n.1).

[3] As the complaint does not specify in what capacity AUSA Rocah is being sued, we analyze plaintiff's claims as if they were made against her in both her official and her individual capacities. Gotbetter v. Wendt, 2008 WL 5147036, *1 n.2 (S.D.N.Y. Dec. 3, 2008), aff'd, 371 F. App'x 165 (2d Cir. 2010).

[4] Plaintiff erroneously names defendant Rocah as "Miram Rocca." (See Fed. Defs.' Mem. of Law 1 n.1).

5

immunities under the Fourth and Fifth Amendments of the United
States Constitution…: to be secure in their person, papers, and
effects against unreasonable searches and seizure; not to be
deprive[d] of life, liberty, and property without due process of
law; the right to counsel when questioned; and the right to the
equal protection of the laws secured by the Fourteenth
Amendment." (Id. at 8-9).

Third, plaintiff asserts that, in violation of 42 U.S.C. §
1983, "[t]he defendants City of New York, NYPD and Police Officers
'John Doe 1-5' did conspire[] with the FBI and the U.S. Department
of Justice and perhaps with others currently unknown… to deprive
Plaintiff of equal protection of the laws" by wrongfully subjecting
him to imprisonment and prosecution. (Id. at ¶ 47).

Plaintiff's fourth cause of action is actually a congeries of
claims cobbled together under the heading "Conspiracy to interfere
with civils rights and Cause of Action Under Bivens and 1983."
(Id. at 10). Plaintiff asserts that "[t]he conspirators committed
acts in furtherance of the conspiracy which included obstructing
justice, intimidating party, arresting Plaintiff when they knew he
was an active, reliable and productive Tier II informant and
falsely testifying in open court that Plaintiff had been
deactivated as an informant prior to his arrest." (Id. at ¶ 48).

6

He asserts that the NYPD knew that plaintiff was an active FBI informant "yet sought to fabricate charges against Plaintiff by bringing false information before a federal grand jury." (Id.). He suggests that defendants Trombetta and Gaeta testified falsely at trial. (Id. ¶¶ 49, 50). Specifically, he asserts that although his FBI handler of eighteen years, FBI Agent Vincent Presutti, had stated that plaintiff was authorized to engage in discussions "of criminal activity for which he was charged," Agent Trombetta, who was plaintiff's handler at the time of his arrest, testified that plaintiff was not authorized to engage in such discussions. (Id. ¶ 49). Plaintiff also asserts that Agent Gaeta lied in testifying that he was unaware that plaintiff was a confidential informant, despite evidence revealing that the agent did know that fact. (Id. ¶ 50). Plaintiff therefore asserts that, in violation of New York and federal law, the defendants falsely arrested and imprisoned him, violated his right to privacy, and maliciously prosecuted him. (Id. ¶ 51).

Plaintiff styles his fifth cause of action as a claim for malicious prosecution and cruel and unusual punishment. (Id. at 11). He asserts that defendants prosecuted him despite "knowing and/or possessing information that Plaintiff had not committed the subject crime; and that defendant[s] could not evince any facts or circumstances which could lead a reasonable prudent person to

7

believe that Plaintiff was guilty of the charges committed." (Id. ¶ 53). He further states that the "wrongful and false charges, arrest, detaining, jailing, strip[p]ing, imprisonment and/or prosecution of the Plaintiff, by the defendants, U.S. Department of Justice, FBI, NYC, and NYPD including 'John Doe 1-5'… constituted an intentional, willful, malicious, reckless and/or grossly negligent disregard for and/or deliberate indifference to Plaintiff's rights… [in] violation of [the] Eight[h] Amendment." (Id. ¶ 54).

Lastly, plaintiff asserts a claim for municipal liability against the City of New York. (Id. at 12). He states that the "acts complained of herein were carried out by the Defendants Police Officers John [D]oe 1-5 in their official capacity as police officers, employees and officials pursuant to the customs, policies, usages, practices, procedures, and rules of NYC and the NYPD, all under the supervision of ranking officers of said department." (Id. ¶ 56). He asserts that the City and NYPD developed and maintained policies or customs "exhibiting deliberate indifference to the Constitutional rights of persons" in the City, including by inadequately and improperly training and supervising informants and police officers, inadequately and improperly investigating allegations "provided by unscrupulous informants," and failing to "investigate with other state and

8

federal law enforcement agencies to determine if a particular target of interest is an… active and operating informant before arresting him." (Id. ¶¶ 58-60).

On October 5, 2012, the municipal defendants moved to dismiss all of the claims against them, pursuant to Federal Civil Procedure Rule 12(b)(6). (City Mot. to Dismiss [docket no. 16]). The federal defendants subsequently moved on November 14, 2012 to dismiss all of the claims against them for lack of subject-matter jurisdiction, under Rule 12(b)(1), failure to state a claim, under Rule 12(b)(6), and failure to properly serve, under Rules 4(m) and 12(b)(5). (Fed. Defs.' Mot. to Dismiss [docket no. 21]).

We begin our analysis with a summary of the standards of review under Rules 12(b)(1) and 12(b)(6). We then assess the merits of the defendants' motions, starting with that of the federal defendants.

## THE APPLICABLE LEGAL STANDARDS

### I.   Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v.

9

United States, 201 F.3d 110, 113 (2d Cir. 2000). As a result, ordinarily "[w]hen presented with a Rule 12(b)(1) motion along with other motions to dismiss, the court must decide the Rule 12(b)(1) motion first." Frisone v. Pepsico, Inc., 369 F. Supp. 2d 464, 472 n.3 (S.D.N.Y. 2005) (citing Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990)).

"'[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.'" Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (quoting NRDC v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006) and APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003)). Rather, for purposes of assessing a motion under Rule 12(b)(1), the court may consider evidence outside the pleadings. Makarova, 201 F.3d at 113. It is the burden of the party asserting federal subject-matter jurisdiction -- in this case, the plaintiff -- to prove by a preponderance of the evidence that such jurisdiction exists. Morrison, 547 F.3d at 170; Makarova, 201 F.3d at 113.

**II.   Rule 12(b)(6)**

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must "'state a claim to relief that is plausible on its face,'" meaning that the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). On a motion to dismiss under Rule 12(b)(6), "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). A court is bound to accept as true the facts alleged in a complaint and to draw all reasonable inferences in favor of the plaintiff. Global Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 154 (2d Cir. 2006). However, this tenet "is inapplicable to legal conclusions," as well as to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678.

In the case of pleadings authored by a pro se litigant, we are required to read plaintiff's allegations liberally and, to the extent possible, to accord them the interpretation most consistent

11

with prevailing legal requirements. See, e.g., Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 473 (2d Cir. 2006). Nonetheless, pro se plaintiffs must satisfy the requirement of Rule 12(b)(6) that the complaint must be plausible on its face. See, e.g., Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009); Carvel v. Cuomo, 2009 WL 4893669, *1 (2d Cir. Dec. 21, 2009) (invoking Twombly plausibility standard); Dorsey v. Fisher, 2009 WL 4985421, *2, *4 (N.D.N.Y. Dec. 15, 2009); Conseillant v. Lafontant, 2009 WL 2163263, *1 (N.D.N.Y. July 20, 2009).

Here, the federal and municipal defendants argue that dismissal should be with prejudice. (See Fed. Defs.' Reply to Order of June 26, 2014 at 10-11; City Mem. of Law 24). However, courts have generally held that if it would not otherwise be futile to amend, a plaintiff should be afforded at least one opportunity to replead claims that were filed pro se. See, e.g., Shibeshi v. City Univ. of New York, 531 F. App'x 135, 136 (2d Cir. 2013); Platsky v. C.I.A., 953 F.2d 26, 28 (2d Cir. 1991); Neal v. Asta Funding, Inc., 2014 WL 3887760, *4 (S.D.N.Y. June 17, 2014).

## THE FEDERAL DEFENDANTS' MOTION

The federal defendants assert a plethora of arguments in support of their motion to dismiss the claims against them. First, they argue that plaintiff failed to properly serve them, in

12

violation of Rule 4(m). (Fed. Defs.' Mem. of Law 7 n.5). Second they urge that the claims against the BOP, the DOJ, and the FBI should all be dismissed because federal agencies are not proper defendants for FTCA or Bivens claims. (Id. at 9). Third, they argue that the FTCA claims against the United States should be dismissed for lack of subject-matter jurisdiction, because the United States enjoys sovereign immunity and at least one of plaintiff's FTCA claims is time-barred. (Id. at 9-13). Fourth, the federal defendants assert that the Bivens claims against them should be dismissed for lack of timeliness, for failure to state a claim, and because of the immunity of the individual federal defendants. (Id. at 13-23). Fifth, they argue that plaintiff's allegation that he was held incommunicado in the MDC Special Housing Unit "at the direction of the FBI" is conclusory, and plaintiff otherwise fails to allege any constitutional claim premised on the conditions of his confinement. (Id. at 23). Sixth, the federal defendants assert that plaintiff's Section 1983 claims are premised on conspiratorial conduct by the FBI and the DOJ, neither of which is a proper defendant under the statute. (Id. at 24). They also insist that plaintiff's conspiracy claims are vague and conclusory and, in any event, are unsustainable as a matter of law because plaintiff has not adequately alleged an underlying violation of his constitutional rights. (Id. at 24 n.13, 25). Lastly, the federal defendants argue that plaintiff has failed to allege facts

13

sufficient to support his remaining claims, including those
asserting (i) that he was "deprived of rights, privileges and
immunities under the Fourth and Fifth Amendments" such as the
rights of individuals "to be secure in their person, papers, and
effects against unreasonable searches and seizure; not to be
deprived of life, liberty, and property without due process… the
right to counsel when questioned; and the right to the equal
protection of the laws secured by the Fourteenth Amendment," (ii)
that defendants obstructed justice and brought "false information
before a federal grand jury that indicted Plaintiff," and (iii)
that they unlawfully invaded his privacy, and subjected him to
cruel and unusual punishment in violation of the Eighth Amendment.
(Id. at 25 (quoting Compl. ¶¶ 44, 48, 51, 54)). The individual
federal defendants further argue that they are absolutely or
qualifiedly immune to any such constitutional claims, absent a
showing that a "clearly established constitutional right" was
violated. (Id. at 25 n.15).

We first assess the federal defendants' motion with respect
to plaintiff's claims against the United States and its agencies,
the BOP, the DOJ, and the FBI. Next, we assess the motion with
respect to the individual federal defendants. Lastly, we address
the issue of plaintiff's failure to properly serve each of the
federal defendants.

14

## I.    Plaintiff's Claims Against the United States and Its Agencies

Plaintiff's claims against the United States and its agencies -- the BOP, the DOJ, and the FBI -- include his Bivens claims, which are asserted against all defendants, as well as his Section 1983 claims, also asserted against all defendants, and his FTCA claims against the United States.

### A. *Bivens* Claims Against the United States and Its Agencies

It is well-established that the purpose of a Bivens claim is to hold individual federal defendants accountable for their personal conduct that violates a plaintiff's constitutional rights. See Arar v. Ashcroft, 585 F.3d 559, 571 (2d Cir. 2009) (en banc) ("The purpose of the Bivens remedy 'is to deter individual federal officers from committing constitutional violations.'") (quoting Corr. Servs. Corp. v. Malesko, 534 U.S. 61, 70 (2001)); accord FDIC v. Meyer, 510 U.S. 471, 485 (1994); Turkmen v. Ashcroft, 915 F. Supp. 2d 314, 353 (E.D.N.Y. 2013). Such claims may not, however, be brought against the United States and its agencies, which generally enjoy sovereign immunity against suit. See Bivens, 403 U.S. 388, 410 (1971); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994); see also Malesko, 534 U.S. at 72 (holding that plaintiff could not bring a Bivens

15

claim against the United States or the employing federal agency,
the BOP); FDIC, 510 U.S. at 484-86 (declining to extend Bivens to
federal agencies); Hightower v. United States, 205 F. Supp. 2d
146, 155 (S.D.N.Y. 2002).

As a result, to the extent that plaintiff asserts his Bivens
claims against the United States, the BOP, the DOJ, and the FBI,
those claims should be dismissed with prejudice.

## B. Section 1983 Claims Against the United States and Its Agencies

Plaintiff invokes Section 1983 in his third and fourth causes
of action and appears to assert these claims against the United
States and named federal entities. (Compl. 9-11). He cannot do so.

In enacting Section 1983, Congress did not waive the sovereign
immunity of the United States and its agencies. See Castro v.
United States, 34 F.3d 106, 110 (2d Cir. 1994) ("United States has
not waived its sovereign immunity with respect to claims that its
employees have committed constitutional torts"); Barani v. Dep't
of Def., 2012 WL 1507208, *1 (S.D.N.Y. Apr. 26, 2012), aff'd, 518
F. App'x 48 (2d Cir. 2013). Thus, to the extent that plaintiff
seeks to assert Section 1983 claims against the United States and
its agencies, those claims should be dismissed with prejudice.

## C. **FTCA Claims Against the United States**

Plaintiff presses his FTCA claims solely against the United States. (Compl. ¶ 40).[5] Those claims cannot survive.

The FTCA constitutes a limited waiver of the federal government's sovereign immunity. See Dolan v. U.S. Postal Serv., 546 U.S. 481, 484 (2006); Liranzo v. United States, 690 F.3d 78, 84-85 (2d Cir. 2012). Specifically, the FTCA provides for:

> claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). The FTCA further states that the United States may be held liable "in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. There are thirteen exceptions to the

---

[5] That is appropriate, since federal agencies are not proper defendants under the FTCA. Rivera v. United States, 928 F.2d 592, 609 (2d Cir. 1991); Sereika v. Patel, 411 F. Supp. 2d 397, 409 (S.D.N.Y. 2006) ("The FTCA precludes tort suit against federal agencies and makes the only proper federal institutional defendant in such an action the United States.").

FTCA's general waiver, set forth in 28 U.S.C. § 2680, and "[i]f one of the exceptions applies, the bar of sovereign immunity remains." Dolan, 546 U.S. at 485. In interpreting those provisions, courts are to adhere to the principle that the "United States' waiver of immunity under the FTCA 'is to be strictly construed in favor of the government.'" Liranzo, 690 F.3d at 84 (quoting Long Island Radio Co. v. NLRB, 841 F.2d 474, 477 (2d Cir. 1988)).

The FTCA also states that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Failure to file an administrative claim within the specified two-year period "may operate as a jurisdictional bar to proceeding in federal court." Wang v. United States, 61 F. App'x 757, 759 (2d Cir. 2003).

In invoking the FTCA, plaintiff first asserts that his rights were violated when he was falsely imprisoned[6] "due to the

---

[6] As the Supreme Court has recognized, under common law "[f]alse arrest and false imprisonment overlap" and "the former is a species of the latter." Wallace v. Kato, 549 U.S. 384, 388 (2007). Similarly, "[u]nder New York law, there is no

18

negligence of the defendants Michael G[aeta], Gregory M[iceli], Michael Trombetta, and Mir[i]am Rocca." (Id. at ¶ 41; see also id. at ¶ 42 (asserting that he was damaged by defendants' "negligence and careless acts"). He also argues that he was "kept in isolation for 19 months at the Metropolitan Detention Center at the request of the [federal] defendants." (Id. at ¶ 41).[7]

The federal defendants argue that these FTCA claims should be dismissed for numerous reasons. First, they argue that the asserted claims are not cognizable under New York tort law, and thus are also not cognizable under the FTCA. Second, they argue that their alleged conduct is covered by one or more exceptions to the FTCA's general waiver of immunity. Third, they argue that plaintiff's false-imprisonment claim is time-barred. Finally, they argue that plaintiff has failed to adequately set forth a claim of negligence against the United States.

---

distinction between false arrest and false imprisonment." Rhodes v. United States, 519 F. App'x 703, 705 (2d Cir. 2013).

[7] Plaintiff does not explicitly articulate a FTCA claim premised on malicious prosecution. However, in light of the numerous references to malicious prosecution throughout the complaint, and bearing in mind plaintiff's pro se status at the time that the complaint was drafted, we construe the complaint as asserting a claim of FTCA liability premised on malicious prosecution.

We now examine each of the federal defendants' arguments against plaintiff's FTCA claim.

### i. **The Absence of a State-Law Analogue**

The federal defendants argue that the FTCA's general waiver of immunity does not apply to plaintiff's FTCA claims because New York does not recognize torts for negligent false imprisonment or "a negligent request… relating to a prisoner's conditions of confinement." (Fed. Defs.' Mem. of Law 9-10). In other words, they argue that there is no state-law analogue for the claims that plaintiff asserts against the United States, and thus those claims do not fall within the scope of the FTCA's general waiver of immunity.[8]

The federal defendants are correct that under New York law "there is no cause of action for false arrest or false imprisonment sounding in negligence." Swinton v. City of New York, 61 A.D.3d 557, 558, 877 N.Y.S.2d 68, 70 (1st Dep't 2009); see Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) ("Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to

---

[8] They do not argue that a state-law analogue is lacking with respect to plaintiff's implied FTCA claim premised on malicious prosecution.

exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."); Simon v. State of New York, 12 A.D.3d 171, 783 N.Y.S.2d 463 (1st Dep't 2004); Boose v. City of Rochester, 71 A.D.2d 59, 62, 421 N.Y.S.2d 740, 744 (4th Dep't 1979) ("Plaintiff may not recover under broad general principles of negligence, however, but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution."); cf. Barr v. Albany Cnty., 69 A.D.2d 914, 915, 415 N.Y.S.2d 471, 473 (3d Dep't 1979), aff'd, 50 N.Y.2d 247, 428 N.Y.S.2d 665 (1980) ("Negligence is not an element of false arrest, since the act itself, if not justified, is tortious irrespective of negligence."). Since plaintiff's FTCA claim for false arrest relies on a legal theory of negligence that New York tort law does not recognize, that claim is not subject to the FTCA's general waiver of immunity and, accordingly, this court lacks subject-matter jurisdiction to consider the claim in the form that it was pled. See Peker v. Steglich, 324 F. App'x 38, 39 (2d Cir. 2009) (quoting Chen v. United States, 854 F.2d 622, 626 (2d Cir. 1988)); Omoniyi v. Dep't of Homeland Sec., 2012 WL 892197, *8 (S.D.N.Y. Mar. 13, 2012); Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. New York, 278 F. Supp. 2d 313, 362 (N.D.N.Y. 2003).

We disagree, however, with the federal defendants' assertion that New York would not, in appropriate circumstances, recognize

21

a negligence claim arising from a request or decision to detain an inmate in the Special Housing Unit. See Markowitz v. State of New York, 37 A.D.3d 1106, 1107 (4th Dep't 2007) (reinstating plaintiff's previously dismissed negligence claim, which was premised on his having been confined in the SHU without being appropriately assessed or treated for mental health needs). Thus, unless one of the FTCA exceptions applies to the SHU claim, or the claim is otherwise jurisdictionally barred, this court may consider it on the merits.

## ii. **The FTCA's Exceptions to the General Waiver of Immunity**

As we have noted, plaintiff's complaint plainly premises his FTCA claim on a theory of negligent conduct. (See, e.g., Compl. ¶¶ 41, 42; see also Compl. ¶¶ 45, 51). Nevertheless, the federal defendants argue that even if the court were to liberally construe plaintiff's FTCA claim for false imprisonment as being premised on a theory of intentionally tortious conduct -- which they concede is recognized under New York law -- the United States would still enjoy immunity because the federal defendants' conduct is subject to several of the FTCA's exceptions to its general waiver. (Fed. Defs.' Mem. of Law 10-12).

First, they argue that 28 U.S.C. § 2680(h) excludes false-arrest or false-imprisonment claims premised on conduct by anyone other than "investigative or law enforcement officers," as defined by that provision. (Fed. Defs.' Mem. of Law 11). Second, they argue that the discretionary-function exception embodied in 28 U.S.C. § 2680(a) bars plaintiff's claims "regarding the conduct of the Agent Defendants relating to their investigation and arrest of Plaintiff," as well as the conduct of AUSA Rocah. (Fed. Defs.' Mem. of Law 11-12). We agree that, even under theories of intentional false imprisonment -- which plaintiff has not adequately pled -- or malicious prosecution, the United States would be immune from suit under the FTCA.

### 1. **The FTCA's Intentional-Tort Exception**

28 U.S.C. § 2680(h) limits false-imprisonment, false-arrest, and malicious-prosecution claims under the FTCA to "acts or omissions of investigative or law enforcement officers of the United States Government" -- i.e. "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h). In other words, the FTCA would bar plaintiff from recovering against the United States premised on intentionally tortious conduct by AUSA Miriam Rocah, see Bernard, 25 F.3d at

104; Wright v. United States, 719 F.2d 1032, 1034 (9th Cir. 1983);

Quinoy v. Pena, 2014 WL 1998239, *6 (S.D.N.Y. May 14, 2014), but

would not necessarily shield such conduct on the part of Special

Agents Michael Gaeta, Gregorio Miceli, and Michael Trombetta,

whose job functions plainly qualify them as investigative or law

enforcement officers. See Walcott v. United States, 2013 WL

5708044, *3 (E.D.N.Y. Oct. 18, 2013) (quoting Weinraub v. United

States, 927 F. Supp. 2d 258, 262-63 (E.D.N.C. 2012)).


### 2. The FTCA's Discretionary-Function Exception


28 U.S.C. § 2680(a) exempts from the FTCA's general waiver of

sovereign immunity any claim that is "based upon an act or omission

of an employee of the Government, exercising due care, in the

execution of a statute or regulation, whether or not such statute

or regulation be valid, or based upon the exercise or performance

or the failure to exercise or perform a discretionary function or

duty on the part of a federal agency or an employee of the

Government, whether or not the discretion involved be abused."


The Supreme Court's decisions in Berkovitz v. United States,

486 U.S. 531 (1988), and United States v. Gaubert, 499 U.S. 315

(1991), outline the test for whether the FTCA's discretionary-

function exception may apply to particular conduct. Under the

Berkovitz-Gaubert test, the United States remains immune from suit "if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an 'element of judgment or choice' and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in 'considerations of public policy' or susceptible to policy analysis." Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (citing Gaubert, 499 U.S. at 322-23; Berkovitz, 486 U.S. at 536-37); see Young v. United States, 2014 WL 1153911, *13-*14 (E.D.N.Y. Mar. 20, 2014); cf. Gaubert, 499 U.S. at 323 ("purpose of the exception is to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort'") (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense, 467 U.S. 797, 814 (1984) [hereinafter "Varig Airlines"]); Berkovitz, 486 U.S. at 539 (purpose of exception is "to prevent '[j]udicial intervention in... the political, social, and economic judgments' of governmental -- including regulatory - - agencies'" (quoting Varig Airlines, 467 U.S. at 820)).

Here, the federal defendants argue that the discretionary-function exception bars plaintiff's FTCA claims that are premised on defendant Rocah's prosecutorial conduct as well as the FBI

25

agents' conduct during the course of their investigation and arrest of plaintiff.

There is no question that the United States is immune from liability for claims arising from AUSA Rocah's decision to prosecute plaintiff. See Rhodes v. United States, 2012 WL 777336, *11 (W.D.N.Y. Mar. 7, 2012), aff'd, 519 F. App'x 703 (2d Cir. 2013) (citing Gray v. Bell, 712 F.2d 490, 513 (D.C. Cir. 1983)); Wang v. United States, 2001 WL 1297793, *4 (S.D.N.Y. Oct. 25, 2001), aff'd, 61 F. App'x 757 (2d Cir. 2003); Morales v. United States, 1997 WL 285002, *1 (S.D.N.Y. May 29, 1997). It is less clear, however, whether the discretionary-function exception also bars plaintiff's FTCA claims arising from the federal agents' investigative and arrest activities.

As several courts have recognized, there is some tension between the exceptions outlined in 28 U.S.C. §§ 2680(a) and 2680(h) when a plaintiff asserts that federal investigative or law-enforcement officers committed an intentional tort in the course of carrying out a seemingly discretionary function, such as an investigation or arrest. See, e.g., Nguyen v. United States, 556 F.3d 1244, 1250-57 (11th Cir. 2009); Medina v. United States, 259 F.3d 220, 224 (4th Cir. 2001); Sutton v. United States, 819 F.2d 1289, 1295-1300 (5th Cir. 1987); Caban v. United States, 671 F.2d

26

1230, 1234-35 (2d Cir. 1982); Paret-Ruiz v. United States, 943 F. Supp. 2d 285, 289 (D. Puerto Rico 2013); Camacho v. Cannella, 2012 WL 3719749, *5-*10 (W.D. Tex. Aug. 27, 2012). On the one hand, as we have already discussed, 28 U.S.C. § 2680(h) specifically provides for federal liability for intentionally tortious acts committed by "investigative or law enforcement officers." Indeed, that statutory exception was introduced by Congress "in 1974… principally in response to abuses committed by federal law enforcement officers in connection with 'no-knock' drug raids in Collinsville, Illinois, in which officers raided the wrong families' homes." Liranzo, 690 F.3d at 85; see also Sutton, 819 F.2d at 1297. On the other hand, the process of carrying out criminal investigations and arrests will invariably require law-enforcement officers to exercise some level of "judgment or choice," Berkovitz, 486 U.S. at 536, and to consider policy issues such as public safety, due process, and the allocation of resources, which, according to the Berkovitz-Gaubert test, should give rise to federal immunity under 28 U.S.C. § 2680(a). See, e.g., Caban, 671 F.2d at 1234-35 (describing border agents' duty to ascertain whether an applicant meets minimal standards for entry into the country as a "basically mechanical duty" and concluding that "the decision of a narcotics agent as to whether there is probable cause to search, seize, or arrest raises many more competing considerations."); Valdez v. United States, 2009 WL

27

2365549, *6-7 (S.D.N.Y. July 31, 2009); Flax v. United States, 847
F. Supp. 1183, 1190-91 (D.N.J. 1994) ("the agents had to balance
several competing concerns, all of which are grounded in
considerations of public policy. Foremost among these
considerations is balancing the potentially conflicting interests
of apprehending the kidnappers but minimizing the risk of harm to
the victim.").

Here, the federal defendants rely primarily on Valdez v.
United States, 2009 WL 2365549 at *6-7, in support of their
argument that the federal agents' conduct falls within the FTCA's
discretionary-function exception. (See Fed. Defs.' Mem. 12). In
Valdez, the plaintiff alleged that he had been falsely arrested
and imprisoned due to Drug Enforcement Administration ("DEA")
agents' negligent disregard of "known existing exculpatory
evidence" concerning the plaintiff. Valdez, 2009 WL 2365549 at *5.
In that case, the court concluded that the discretionary-function
exception applied to the DEA agents (1) because there was no
statute, regulation, or policy dictating specifically how an
investigation was to be carried out, nor how a suspect was to be
identified, thus rendering the agents' activities discretionary,
and (2) because the agents' activities implicated public-policy
considerations, including public safety and choices about how best
to utilize resources. See id. at *6.

28

While we agree with the outcome reached in Valdez, we find the court's reasoning in that case to be over-broad in that it fails to address the potential relevance of section 2680(h) and, presumably, could be read to foreclose liability arising from the large majority of investigatory activities carried out by law-enforcement officers. See Camacho, 2012 WL 3719749 at *7 n.3. We do not believe that the FTCA permits such an expansive reading of the discretionary-function exception. See Bell v. Reno, 218 F.3d 86, 91 (2d Cir. 2000) ("It is a well-known canon of statutory construction that, in general, a statute should not be construed so as to render a word or clause inoperative."). Nor do we believe that such an interpretation of the FTCA comports with the caselaw in this circuit. See Caban, 671 F.2d at 1234 ("We do not think, however, that either section should be read to eviscerate the other."); Wilson v. United States, 767 F. Supp. 551, 552-53 (S.D.N.Y. 1991) ("Plaintiff's claims for false imprisonment and malicious prosecution do not fall within the discretionary function exception of the FTCA."). Rather, we agree with the reasoning outlined in Camacho v. Cannella, which held that "when the alleged conduct crosses the line from negligent conduct to intentional misconduct or bad faith, the discretionary exception yields to the law enforcement proviso, and the lawsuit can proceed." Camacho, 2012 WL 3719749 at *9; accord Caban, 671 F.2d at 1234; Rhodes, 2012 WL 777336 at *12 (comparing cases where

29

quality of investigation was at issue with those where officers lied or encouraged false testimony); Valdez, 2009 WL 2365549 at *7; Wang, 2001 WL 1297793 at *2-*3 ("allegations based on the quality of the investigation generally do not give rise to FTCA claims"); Glickman v. United States, 626 F. Supp. 171, 175 (S.D.N.Y. 1985) (discretionary-function exception did not bar liability where CIA had administered LSD to plaintiff without his permission or knowledge).

In this case, plaintiff asserts in conclusory fashion that the federal defendants acted in "bad faith" (see Compl. ¶ 31), but he alleges little more than negligent conduct on their part, suggesting that "[t]he government had the opportunity to know Plaintiff well enough to see that he was not the type of individual that would commit the crimes he was charged with" (id. ¶ 51) and that they should not have relied on the information provided to them by the "unscrupulous" informant Michael Cooks. (Id. ¶ 28). Because the allegations underlying plaintiff's FTCA claim sound in negligence, rather than intentional misconduct, we conclude that the discretionary-function exception does indeed apply to the federal agents' investigative and arrest activities. (See Compl. ¶¶ 39-42).

In sum, we conclude that, as pled, plaintiff's FTCA claims premised on false arrest and malicious prosecution should be dismissed in light of the discretionary-function exception.

We note that the federal defendants have not asserted the discretionary-function exception with respect to plaintiff's FTCA claim concerning his detention in the SHU. However, because that issue implicates the court's subject-matter jurisdiction, we address it sua sponte. See Hart v. United States, 630 F.3d 1085, 1089 (8th Cir. 2011) (holding that district court did not err in sua sponte considering whether FTCA's discretionary-function exception applied); Roberts v. United States, 85 F.3d 637 (9th Cir. 1996) ("Although the Government does not argue on appeal that the discretionary function exception to the FTCA applies, we address this question of jurisdiction sua sponte and review it de novo."). Contrast Day v. McDonough, 547 U.S. 198, 205 (2006) (in habeas context "[a] statute of limitations defense… is not 'jurisdictional,' hence courts are under no obligation to raise the time bar sua sponte.") (original emphasis omitted).

In general, courts have deemed the federal government immune with respect to claims challenging the decision of whether and when to return an inmate from the SHU to the prison's general population. As recently explained: "Decisions about which inmates

31

must be separated from other inmates are susceptible to policy analysis, as they 'involve a balancing of a number of public policy considerations including the inmate safety, the ability of inmates to move about the facility, general concerns for prison security, and the effective use of limited resources.'" Young, 2014 WL 1153911 at *11 n.5 (quoting Ortiz v. United States, 2002 WL 1492115, at *4 (S.D.N.Y. July 11, 2002)); Winters v. United States, 2013 WL 1627950, *2, *5 (S.D.N.Y. Apr. 16, 2013); accord Enigwe v. Zenk, 2007 WL 2713849, *8 (E.D.N.Y. Sept. 14, 2007) ("decisions regarding the best way to safeguard prisoners are discretionary in nature"). Based on this reasoning, we also conclude that the discretionary-function exception applies to plaintiff's FTCA claim premised on his detention in the SHU.

### 3. The FTCA's Time-Bar

The federal defendants also argue that plaintiff's FTCA false-imprisonment claim is time-barred because plaintiff did not file an administrative claim within two years of the date when his claim accrued. (Fed. Defs.' Mem. of Law 12-13). We agree.[9]

---

[9] The federal defendants asserted the time-bar solely with respect to the false-imprisonment FTCA claim and not the malicious-prosecution or SHU-detention claims. Accordingly, we limit our assessment of the time-bar to the false-imprisonment claim.

"The date on which an FTCA claim accrues is determined as a matter of federal law." Syms v. Olin Corp., 408 F.3d 95, 107 (2d Cir. 2005); see A.Q.C. ex rel. Castillo v. United States, 656 F.3d 135, 139 (2d Cir. 2011). "Depending on the circumstances, claims accrue either at the time of injury or when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the facts giving rise to the cause of action." Syms, 408 F.3d at 107.

Notwithstanding this general nostrum, a claim of false imprisonment accrues under federal law at the earlier of either plaintiff's release or the time that his detention first becomes subject to legal process, such as when he is detained pursuant to a warrant, is bound over by a magistrate, or is arraigned on charges. See Wallace, 549 U.S. at 388-390 (discussing false-imprisonment claim under Section 1983); see also Wang, 61 F. App'x at 759 (accrual on date of arrest). "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." Wallace, 549 U.S. at 390 (quoting W. Keeton, D. Dobbs,

R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, p. 888 (5th ed. 1984)) (emphasis in original).[10]

In this case, the federal defendants assert that plaintiff was arrested on January 9, 2009[11] and appeared for an initial bond proceeding on January 14, 2009. (Fed. Defs.' Mem. of Law 13). The current record, however, shows that plaintiff's earliest appearance before the court was on February 9, 2009, for a bond hearing before Judge Buchwald. (See Tinio Decl. Ex. A p. 4). Accordingly, for present purposes, we treat the February 9, 2009 hearing date as the date on which plaintiff's FTCA false-imprisonment claim accrued. Plaintiff alleges that he filed his administrative claims with "the appropriate agencies" on June 6, 2011 (Compl. ¶ 3). Since that date was more than two years after February 9, 2009, it follows that plaintiff's FTCA claim premised on false imprisonment is time-barred.[12]

---

[10] As for a claim for malicious prosecution, "[b]ecause no cause of action exists… until the underlying proceeding is terminated in the plaintiff's favor, the claim does not accrue and the statute of limitations does not begin to run until the date on which that termination occurs." Frontera v. United States, 2009 WL 909700, *11 (W.D.N.Y. Mar. 31, 2009).

[11] That assertion is consistent with plaintiff's allegation in his complaint. (See Compl. ¶ 13).

[12] Plaintiff has not alleged any basis for the application of equitable tolling to his case. "This 'drastic remedy' is therefore unwarranted." Goldblatt v. Nat'l Credit Union Admin., 502 F. App'x 53, 55-56 (2d Cir. 2012).

34

### iii. **Failure to State a Claim Against the United States for Negligence**

The federal defendants also argue that plaintiff's FTCA claim
premised on his detention in the SHU fails as a matter of law
because plaintiff "has not pled (and cannot demonstrate) that the
Agent Defendants and AUSA Rocah owed him a duty not to request
that he be held in the SHU." (Fed. Defs.' Mem. of Law 10). They
are correct.

"In order to establish a prima facie case of negligence under
New York law, a claimant must show that: (1) the defendant owed
the plaintiff a cognizable duty of care; (2) the defendant breached
that duty; and (3) the plaintiff suffered damage as a proximate
result of that breach." Farash v. Cont'l Airlines, Inc., 337 F.
App'x 7, 9 (2d Cir. 2009) (quoting Stagl v. Delta Airlines, Inc.,
52 F.3d 463, 467 (2d Cir. 1995)). Here, plaintiff has failed to
allege facts plausibly suggesting that AUSA Rocah or the federal
agents had a duty to refrain from requesting that he be detained
in the SHU, and we have been unable to identify any caselaw that
might support such a claim.[13]

---

[13] The federal defendants suggest that it was Bureau of Prisons
personnel, not AUSA Rocah or the federal agents, who decided to
house plaintiff in the SHU. (See Fed. Defs.' Mem. of Law 10 n.6).
Of course, conduct on the part of the BOP could give rise to
federal liability under the FTCA, provided that such conduct falls

### D. **Conclusions Regarding Claims Against the United States and Its Agencies**

For all of the reasons discussed, we recommend that the court dismiss each of plaintiff's claims against the United States, the DOJ, the BOP, and the FBI. As previously noted, the <u>Bivens</u> claims and Section 1983 claims should be dismissed with prejudice. As for plaintiff's FTCA claims, the claim premised on false imprisonment should be dismissed with prejudice because it is time-barred. The FTCA claim premised on plaintiff's detention in the SHU should also be dismissed with prejudice because the decision to hold him there clearly fall within the discretionary-function exception to the FTCA and amendment of the claim would be futile. However, because it is conceivable that plaintiff could amend his complaint to plausibly suggest that the FBI agents maliciously prosecuted him (<u>see</u> <u>infra</u> 44-49) and that the discretionary-function exception does not apply because they acted in bad faith, we

---

within the scope of the FTCA's waiver of immunity. However, as we have indicated (<u>see</u> <u>supra</u> 30-32), courts have generally deemed decisions concerning the safeguarding of inmates, including decisions over whether to hold them in the SHU, to be immune from liability pursuant to the discretionary-function exception. <u>See</u> <u>Winters</u>, 2013 WL 1627950 at *2, *5; <u>see</u> <u>also</u> <u>Enigwe</u>, 2007 WL 2713849 at *8. Moreover, to the extent that plaintiff would seek to articulate a due-process claim against the United States, the FTCA does not provide relief for such constitutional claims. <u>Rivera</u>, 928 F.2d at 608. Thus, because plaintiff would be unable to make out a viable FTCA claim against the BOP even if he were to replead his claim on the issue of his confinement in the SHU, we recommend that the FTCA SHU claim be dismissed with prejudice.

recommend that the FTCA claim premised on malicious prosecution by the FBI agents be dismissed with leave to replead. To the extent that plaintiff premises his malicious-prosecution claim on the conduct of AUSA Roccah, however, the claim should be dismissed with prejudice.

## II. Plaintiff's Claims Against the Individual Federal Defendants

We next consider plaintiff's claims against the individual federal defendants -- AUSA Miriam Rocah and FBI Special Agents Michael Gaeta, Gregory Miceli, and Michael Trombetta -- which are asserted under Section 1983 and Bivens.

### A. Section 1983 Claims Against the Individual Federal Defendants

Section 1983 provides relief only against individuals acting under color of state law, not those acting under color of federal law. See Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 (2d Cir. 1991). For that reason, we construe plaintiff's Section 1983 claims against the individual federal actors as Bivens claims. See Robinson, 21 F.3d at 510; Spinale v. U.S. Dep't of Agric., 621 F. Supp. 2d 112, 119 (S.D.N.Y. 2009), aff'd, 356 F. App'x 465 (2d Cir. 2009) ("Where a plaintiff brings a Section 1983 claim against federal defendants in error, the proper course of action is to

construe the complaint as stating a cause of action under Bivens…").

## B. *Bivens* Claims Against the Individual Federal Defendants

The federal defendants challenge plaintiff's Bivens claims against AUSA Rocah and the FBI agents on the grounds that those defendants are immune from suit and that the claims against them are otherwise time-barred or meritless. (Fed. Defs.' Mem. of Law 13-25).

Under Bivens, a plaintiff may recover against federal actors in their individual capacities only for conduct undertaken under color of federal authority. M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013); Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006). To do so, the plaintiff must allege that the individual federal defendants directly participated in the alleged constitutional violation, Arar, 585 F.3d at 569; Thomas, 470 F.3d at 496-97; Nwaokocha v. Hagge, 47 F. App'x 55, 56 (2d Cir. 2002), and "must both prove a deliberate abuse of governmental power rather than mere negligence, and overcome the defense of [absolute or] qualified immunity." Schweiker v. Chilicky, 487 U.S. 412, 447 (1988).

As the Second Circuit has observed, the Supreme Court has recognized Bivens claims arising under the Fourth, Fifth, and Eighth Amendments, but "[b]ecause a Bivens action is a judicially created remedy… courts proceed cautiously in extending such implied relief, particularly if either of two factors (absent from Bivens) are present in a case, specifically: (a) an 'explicit congressional declaration that persons injured by a federal officer's violation of [a constitutional] Amendment may not recover money damages from the agents but must instead be remitted to another remedy equally effective in the view of Congress,' or (b) 'special factors counseling hesitation in the absence of affirmative action by Congress.'" Dotson v. Griesa, 398 F.3d 156, 166 (2d Cir. 2005) (quoting Bivens, 403 U.S. at 396-97, and citing cases). In those cases where Bivens claims are permitted, "federal courts have typically incorporated § 1983 law into Bivens actions." Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995).

We first assess plaintiff's Bivens claims against AUSA Rocah and then consider his claims against the three FBI agents.

### i. *Bivens* Claims Against AUSA Rocah

The complaint identifies defendant Rocah only twice by name and does not allege any conduct whatsoever that is specifically

39

attributable to her. (See Fed. Defs. Mem. of Law at 16 (citing Compl. ¶¶ 7, 41). In other words, there are no specific allegations of actions taken by defendant Rocah that could support a claim that she was directly involved in violating plaintiff's constitutional rights. This omission in and of itself is an adequate ground for dismissing plaintiff's Bivens claims against her.

What is more, the only conduct on the part of AUSA Rocah that is even remotely suggested by the complaint is that she undertook the prosecution of his criminal case. (See generally Compl.). That is conduct for which she enjoys absolute immunity from suit. Van de Kamp v. Goldstein, 555 U.S. 335, 343-42 (2009); Burns v. Reed, 500 U.S. 478, 485 n.4 (1991) ("federal prosecutors [are] absolutely immune from suits for malicious prosecution."); cf. Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976) ("An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity.").

For these reasons, we recommend that the Bivens claims against AUSA Rocah be dismissed with prejudice.

## ii. *Bivens* Claims Against The Individual FBI Agents

We next consider plaintiff's Bivens claims against the individual federal agents -- FBI Special Agents Michael Gaeta, Gregory Miceli, and Michael Trombetta.

## 1. Fourth Amendment *Bivens* Claims

Plaintiff's claims of false imprisonment and malicious prosecution implicate constitutional rights arising under the Fourth Amendment. Williams v. Young, 769 F. Supp. 2d 594, 603 (S.D.N.Y. 2011).[14] According to the Second Circuit, because Bivens claims resemble claims brought under Section 1983 "'in terms of the interests being protected, the relief which may be granted, and the defenses which may be asserted,'" federal courts should incorporate Section 1983 law into their Bivens analogues. Tavarez, 54 F.3d at 110 (quoting Chin v. Bowen, 833 F.2d 21, 23 (2d Cir. 1987)); accord Hartman v. Moore, 547 U.S. 250, 254 n.2 (2006). For that reason, courts in this circuit have assessed false-imprisonment and malicious-prosecution Bivens claims in the same manner as comparable Section 1983 claims –- that is, by applying

---

[14] Plaintiff has also asserted that the defendants unlawfully invaded his privacy. That inchoate allegation is not pled with sufficient specificity for us to even discern the premise of his argument. It is, in other words, inadequately pled under Rule 8 and should be dismissed.

41

the law of the state in which the alleged misconduct occurred --

here, New York. See, e.g., Russo v. City of Bridgeport, 479 F.3d

196, 203 (2d Cir. 2007) (discussing false arrest); Williams, 769

F. Supp. 2d at 603 (applying New York substantive law to Bivens

claims for false arrest and malicious prosecution); Alcantara v.

City of New York, 646 F. Supp. 2d 449, 457 (S.D.N.Y. 2009)

(malicious prosecution).

### a. False-Arrest/Imprisonment Claim

To make out a claim for false imprisonment under New York

law, a plaintiff must plead and prove that "(1) the defendant

intended to confine him, (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement

and (4) the confinement was not otherwise privileged." Broughton

v. State, 37 N.Y.2d 451, 456, 373 N.Y.S.2d 87, 93 (1975).[15]

---

[15] Notably, "[t]he distinction between false imprisonment
and malicious prosecution in the area of arrest depends on
whether or not the arrest was made pursuant to a warrant. As
noted in the Restatement, 2d, [Torts,] an unlawful detention
gives rise to a cause of action for false imprisonment 'except
where the confinement was by arrest under a valid process issued
by a court having jurisdiction.' When an unlawful arrest has
been effected by a warrant an appropriate form of action is
malicious prosecution." Broughton, 37 N.Y.2d at 457-58, 373
N.Y.S.2d at 93 (quoting Restatement, 2d, Torts, s 35, comment A;
Prosser, Torts (4th ed.), s 11). Although the complaint does not
mention whether plaintiff's arrest was subject to a warrant, the
record suggests that it may have been warrantless. (See Tinio

42

The federal defendants argue that plaintiff's false-imprisonment _Bivens_ claim should be dismissed because the claim is untimely and inadequately pled. They also assert that the FBI agents are qualifiedly immune. (Fed. Defs.' Mem. of Law 16).

The statute of limitations for _Bivens_ actions arising in New York is three years, _Tapia-Ortiz v. Doe_, 171 F.3d 150, 151 (2d Cir. 1999); _Chin_, 833 F.2d at 24, and, as previously discussed (see _supra_ p. 33), those claims accrue at the earlier of either the plaintiff's release or the time that his detention first becomes subject to legal process. See Wallace, 549 U.S. at 388-390. In this case, the record indicates that at the latest plaintiff's arrest became subject to legal process on February 9, 2009. (See _supra_ p. 34). Thus, the statute of limitations on his _Bivens_ false-arrest claim expired three years later, on February 9, 2012. Since plaintiff filed his complaint more than three months after that date, on May 23, 2012, his _Bivens_ claim premised on his arrest is time-barred. See, e.g., _Strother v. Harte_, 171 F. Supp. 2d 203, 208 (S.D.N.Y. 2001).

---

Decl. Ex. A (warrant not listed on docket sheet)). If so, plaintiff's false-imprisonment claim would presumably encompasses those acts surrounding his arrest and leading up to the time that the criminal complaint was filed.

Moreover, as the federal defendants correctly note (see Fed. Defs.' Mem. of Law 18), the complaint fails to set forth any allegations concerning the three FBI agents' personal involvement in plaintiff's arrest, and does not indicate how their conduct violated his constitutional rights. (See generally Compl.). In the absence of such allegations, plaintiff's Bivens false-arrest claims against each of the FBI agents must be dismissed. See, e.g., Black v. Reno, 2000 WL 37991, *16 (S.D.N.Y. Jan. 18, 2000).[16]

In light of the time-bar on plaintiff's false-imprisonment Bivens claim, it would be futile for him to amend the claim, and we therefore recommend that it be dismissed with prejudice.

---

[16] The FBI agents also contend that, because there was probable cause to support plaintiff's arrest, the arrest was privileged and the agents' conduct is protected by qualified immunity. We conclude that such questions may not be decided at this stage of the litigation. See Posr v. Court Officer Shield No. 207, 180 F.3d 409, 415 (2d Cir. 1999); Guzman v. City of New York, 2010 WL 4025563, *3 (E.D.N.Y. Oct. 13, 2010). Here, the complaint alleges that, in light of all of the information that was available to the defendants, including their knowledge of plaintiff's status as an FBI informant, it was not reasonable for the arresting officers to conclude that plaintiff was about to engage in criminal activity and, thus, probable cause was lacking. Because we are unable to assess the validity of that factual assertion in the context of a motion to dismiss, we decline to address the federal defendants' arguments concerning qualified immunity and privileged arrest.

## b. **Malicious-Prosecution Claim**

To plead a malicious-prosecution claim in New York, the plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." See Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (internal quotes and citations omitted); see Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003); Martin v. City of Albany, 42 N.Y.2d 13, 16, 396 N.Y.S.2d 612, 614 (1977).

The federal defendants challenge plaintiff's malicious-prosecution claim against each of the FBI agents on the grounds that (1) the complaint does not allege that the agents initiated the criminal proceeding against plaintiff, (2) at least two of the charges against plaintiff were not terminated "favorably" for him, and (3) there was probable cause to commence the proceeding. (Fed. Defs.' Mem. of Law 21-23). We agree with defendants' first argument.[17]

---

[17] For reasons already noted (see p. 44 n.15), in the context of a motion to dismiss, we are unable to assess whether probable

45

Generally, there is a rebuttable presumption that criminal proceedings are initiated by prosecutors, not arresting officers. See Mitchell v. Victoria Home, 434 F. Supp. 2d 219, 228 (S.D.N.Y. 2006). There is also a presumption that once a criminal defendant has been indicted there is probable cause for his prosecution, unless the "indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" Savino, 331 F.3d at 72 (quoting Colon v. City of New York, 60 N.Y.2d 78, 83, 468 N.Y.S.2d 453, 456 (1983)).

An arresting officer may be held liable for malicious prosecution if he or she "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Mitchell, 434 F. Supp. 2d at 227. In addition, an officer will be liable for malicious prosecution if he or she "'"creates false information likely to influence a jury's decision and forwards that information to prosecutors", or… withholds relevant and material information'" from the prosecutor. Id. (quoting Brome v. City of New York, 2004 WL 502645, *5-*6 (S.D.N.Y. Mar. 15, 2004)) (other internal cites omitted).

---

cause actually existed for plaintiff's arrest and prosecution. We therefore decline to address that argument at this time.

The only specific wrongdoing on the part of the FBI agents that plaintiff alleges in the complaint is (1) that defendant Trombetta testified falsely at trial concerning whether plaintiff, as an informant, was authorized by the FBI to engage in criminal discussions (Compl. ¶ 49), and (2) that defendant Gaeta testified falsely at trial by stating that he had been unaware of plaintiff's status as an FBI informant. (Id. ¶ 50). Notably, plaintiff does not allege that the federal agents encouraged the prosecutor to initiate criminal proceedings against him, or that they provided materially false information to the prosecutor prior to the return of the indictment, so that it could be inferred that their conduct might have influenced the decision to prosecute. In other words, plaintiff has failed to allege facts that could rebut the presumption that his prosecution was initiated solely by the prosecutor and not by the FBI agents.

In any event, even if the FBI agents had made the same lies to the prosecutor prior to plaintiff's indictment that he alleges were made at trial, it is not at all apparent that those lies would likely have impacted the prosecutor's decision to prosecute. That is particularly true in light of plaintiff's allegation to the effect that the prosecutor was aware that he was an FBI informant, and his admissions both that he had engaged in conversations concerning a murder-for-hire plot and that an informant, Michael

47

Cooks, had provided the authorities with incriminating information about him -- all of which would presumably support a prosecutor's decision to prosecute. (See, e.g., Compl. ¶¶ 29, 30, 34, 37).[18]

In addition, plaintiff has failed to adequately allege facts that would overcome the presumption of probable cause created by his indictment. Although he alleges in vague and conclusory terms that his indictment was procured by perjury (Compl. ¶ 48), he fails to specify the nature of the allegedly false testimony to the grand

---

[18] The federal defendants also argue that "[p]laintiff unquestionably did not receive a favorable termination of at least two of the charges against him," since the Government voluntarily dismissed the firearm charge against him and filed a nolle prosequi on the conspiracy charge. (See Fed. Defs.' Mem. of Law 23 n. 11; see also Tinio Decl. Ex. A p. 20, Ex. G). Although the Second Circuit has acknowledged that "there is authority that a malicious prosecution claim in New York always requires a formal resolution on the merits in the prior proceedings" O'Brien v. Alexander, 101 F.3d 1479, 1486 (2d Cir. 1996), it has also indicated that such a claim may proceed if the final termination "is not inconsistent with innocence." Rothstein v. Carriere, 373 F.3d 275, 286 (2nd Cir. 2004). Thus, a formal abandonment of the proceedings by the prosecutor, for example by entering a nolle prosequi or moving to dismiss the complaint, may constitute a favorable termination. See Guzman v. United States, 2013 WL 543343, *8 (S.D.N.Y. Feb. 14, 2013); Lawson v. New York Billiards Corp., 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004). Ultimately, the question of whether the firearm and conspiracy charges against plaintiff were favorably terminated will turn on the reasons for those charges having been abandoned –- that is, facts that are not reflected in the complaint and that are inappropriate for consideration in the context of a motion to dismiss. See Murphy v. Lynn, 118 F.3d 938, 949 (2d Cir. 1997) ("whether the prosecution's effective abandonment of a prosecution… constitutes a termination favorable to the accused for purposes of a malicious prosecution claim generally depends on the cause of the abandonment").

48

jury, or to identify the alleged perjurers -- although he appears to implicate unnamed members of the NYPD, rather than the FBI agents. (Id.); see Cruz v. Reilly, 2009 WL 2567990, *3 n.3 (E.D.N.Y. Aug. 18, 2009) (allegation of perjury may not be conclusory and should set forth factual basis to put defendants on notice of the claim); Hornstein v. Wolf, 109 A.D.2d 129, 133, 491 N.Y.S.2d 183, 187 (2d Dep't 1985), aff'd, 67 N.Y.2d 721, 490 N.E.2d 857 (1986). Absent a well-pled allegation that the indictment itself was procured by "'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith,'" we must presume that probable cause existed for plaintiff's prosecution. Savino, 331 F.3d at 72 (quoting Colon, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456); Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003); (see also Tinio Decl. Ex. A p. 7; Publicker Decl. Ex. C). That presumption of probable cause is fatal to plaintiff's claim of malicious prosecution. Savino, 331 F.3d at 72 ("the existence of probable cause is a complete defense to a claim of malicious prosecution in New York"); Gannon v. City of New York, 917 F. Supp. 2d 241, 244 (S.D.N.Y. 2013).

For these reasons, the Bivens claim premised on malicious prosecution by the federal agents must fail, at least in the form that it is pled. However, because it is conceivable that plaintiff could amend the complaint to set forth a plausible claim against

the federal agents, we recommend that the claim be dismissed with
leave to replead.

## 2. Other *Bivens* Claims

In addition to his Fourth-Amendment claims for false arrest
and malicious prosecution, plaintiff asserts several other
constitutional claims against the federal defendants. He argues,
for example, that his detention in the SHU for a period of nineteen
months violated his rights, presumably under the Due Process Clause
of the Fifth Amendment. (See Compl. ¶¶ 36, 54). He also asserts
that the defendants entered into a conspiracy to deprive him of
his constitutional rights (id. ¶¶ 47, 48); thus, he alleges, for
example, that FBI agents Trombetta and Gaeta testified falsely at
his trial in order to procure a conviction. (Id. ¶¶ 49-50). In
sweeping language, plaintiff also argues that the defendants
deprived him of his rights "to be secure in [his] person, papers,
and effects against unreasonable searches and seizure; not to be
deprive[d] of life, liberty, and property without due process of
law; the right to counsel when questioned; and the right to the
equal protection of the laws secured by the Fourteenth Amendment"
(Compl. ¶ 44), as well as his rights to privacy (id. ¶ 51) and to
be free from cruel and unusual punishment. (Id. ¶ 54).

50

With the exception of plaintiff's claim concerning his prolonged detention in the SHU,[19] none of his constitutional claims is pled with sufficient specificity to satisfy the pleading standard outlined by Rule 8(a). Fed. R. Civ. P. 8(a); see DiMuro v. Clinique Labs., LLC, __ F. App'x __, 2014 WL 3360586, *4 (2d Cir. July 10, 2014). Moreover, in asserting each of these claims, including the SHU claim, plaintiff fails to allege that any of the individual federal defendants was personally involved in any of the asserted constitutional violations.[20]

---

[19] We note that the federal defendants have challenged the ultimate viability of plaintiff's SHU claim, arguing that "Judge Buchwald's June 2011 ruling indicated that the conditions of Plaintiff's confinement resulted from his own wishes" (Fed. Defs.' Mem. of Law 23 n.12) due to "'his refusal to be transferred to general population at the Queens Contract Detention Facility.'" (Id. at 4 n.4 (quoting Mem. & Order (Buchwald, J.) dated June 11, 2010)). They have not argued on the current motion that plaintiff's SHU claim is collaterally estopped by Judge Buchwald's June 11, 2010 order, and to the extent that they are citing the order for the truth of the matter asserted therein, they may not do so in the context of a motion to dismiss. See Tiraco v. New York State Bd. of Elections, 963 F. Supp. 2d 184, 189 n.4 (E.D.N.Y. 2013).

[20] The only personal conduct that plaintiff alleges is the aforementioned false testimony at his trial by Agents Trombetta and Gaeta, but this does not amount to a constitutional violation on which a Bivens-conspiracy claim may be premised. Perjured testimony may raise due-process concerns only if, inter alia, it draws the underlying verdict into question. See Ortega v. Duncan, 333 F.3d 102, 108 (2d Cir. 2003); Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988). However, in this case, plaintiff was acquitted of the murder-for-hire charge and the remaining conspiracy charge was dismissed after the jury hung. In other words, notwithstanding the allegedly perjured testimony against him, plaintiff was not convicted by the jury

For these reasons, we recommend that all of plaintiff's remaining Bivens claims be dismissed. Since it is conceivable that plaintiff might plausibly allege facts supporting one or more of these claims, they should be dismissed with leave to replead.

## III. **Plaintiff's Failure to Properly Serve the Federal Defendants**

The federal defendants argue that even if the claims against them did not otherwise warrant dismissal, the complaint should be dismissed for failure to properly serve them. They state that "[t]he only service Plaintiff has potentially effected is certified mailing to the U.S. Attorney and to the DOJ, FBI, and BOP." (Fed. Defs.' Mem. of Law 7 n.5). They assert that plaintiff did not serve the Attorney General, as required by Rule 4(i) to effect service on the United States and its agencies, nor has he served any of the individual defendants, as required by Rules 4(i) and 4(e), within 120 days of filing to complaint, and he has not shown good cause for his failure to do so. (Id.).

---

and, for that reason, he is unable to allege that his due-process rights were violated by that testimony.

We also note that the FBI agents may be entitled to absolute immunity for their testimony at trial, provided that they do not qualify as complaining witnesses who acted with malice. Malley v. Briggs, 475 U.S. 335, 344-45 (1986); Briscoe v. LaHue, 460 U.S. 325, 336-46 (1983).

52

Pursuant to Rule 4(i) of the Federal Rules of Civil Procedure, the United States, its agencies, and its employees who are sued in their official capacities must be served as follows:

**(A)(i)** deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought -- or to an assistant United States attorney or clerical employee whom the United States attorney designates in a writing filed with the court clerk -- or
**(ii)** send a copy of each by registered or certified mail to the civil-process clerk at the United States attorney's office;

**(B)** send a copy of each by registered or certified mail to the Attorney General of the United States at Washington, D.C.; and

**(C)** if the action challenges an order of a nonparty agency or officer of the United States, send a copy of each by registered or certified mail to the agency or officer.

Fed. R. Civ. P. 4(i). Notably, service on federal employees who are sued in their individual capacities need not be carried out in accordance with Rule 4(i), but rather should be effected pursuant to Rule 4(e). Armstrong v. Sears, 33 F.3d 182, 185-87 (2d Cir. 1994). Rule 4(e) provides that service may be made by:

**(1)** following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

**(2)** doing any of the following:

53

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

In this case, the docket reflects that service was made by certified mail on the United States Attorney for the Southern District of New York, the BOP, the DOJ, and the FBI. (See docket nos. 3-5, 8). Nonetheless, in contravention of Rule 4(i)(B), plaintiff did not serve the Attorney General of the United States within the 120-day period required by Rule 4(m). Thus, his service on the United States, its agencies, and its employees, insofar as they are sued in their official capacities, was defective.

In addition, plaintiff failed to serve any of the individually-named federal defendants as required by Rules 4(e) and 4(m). Thus, he has also failed to make effective service on the federal defendants whom he has sued in their individual capacities.

Plaintiff has made no effort to explain his failure to properly serve the federal defendants, much less to show good cause for that failure. Accordingly, his claims against each of the federal defendants should be dismissed under Rules 4(m) and 12(b)(5).[21]

## THE MUNICIPAL DEFENDANTS' MOTION

The municipal defendants challenge the claims against them on a variety of grounds. They argue first that the NYPD is not a suable entity. (City Mem. of Law 6). They also argue that plaintiff has failed to allege facts sufficient to make out a Monell claim against the City of New York, and that plaintiff's Section 1983 claims against the City must be dismissed. (Id. at 6-8, 19-23). They assert that all state-law claims are barred because plaintiff failed to comply with New York State's notice-of-claim requirement. (Id. at 14-16). In addition, they argue that plaintiff has failed to state a claim for false arrest or malicious prosecution (id. at 16-19) and that his other claims are inadequately pled. (Id. 8-12).

---

[21] Unless claims are otherwise doomed to failure, dismissal under Rule 4 is without prejudice. See Frasca v. United States, 921 F.2d 450, 453 (2d Cir. 1990); Hurd v. New York City Health & Hosp. Corp., 2008 WL 2127659, *2 (S.D.N.Y. May 20, 2008).

We address these arguments more or less in the order they were raised.

## I.  Plaintiff's Claims Against the NYPD

The municipal defendants are correct that the NYPD is not a suable entity. Section 396 of the New York City Charter states that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency." N.Y. City Charter § 396 ch. 16. That provision has been interpreted to require that parties who seek to sue for wrongdoing by a City agency, including the NYPD, name the City as the defendant. See, e.g., Gutierrez v. City of New York, 756 F. Supp. 2d 491, 499 (S.D.N.Y. 2010); Woodward v. Morgenthau, 740 F. Supp. 2d 433, 440 (S.D.N.Y. 2010).

For that reason, we recommend that the NYPD be dismissed from the case.

## II.  Plaintiff's State-Law Claims Against the City and Its Police Officers

New York State's General Municipal Law § 50-i requires a plaintiff seeking to recover against a municipality such as the City "to plead in the complaint that: (1) the plaintiff has served

56

the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim." Hardy v. New York City Health & Hosp. Corp., 164 F.3d 789, 793 (2d Cir. 1999). In addition, General Municipal Law § 50-e requires that a notice of claim be filed "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). In general, state notice-of-claim requirements apply to all state-law claims asserted in federal court, and failure to comply with New York's notice-of-claim rules "ordinarily requires a dismissal for failure to state a cause of action." Hardy, 164 F.3d at 793-94.

Here, the municipal defendants argue that plaintiff has failed to allege, as required by § 50-i, both that he filed a notice of claim and that thirty days have elapsed since the date of filing, without a favorable response from the City. (See City Mem. of Law 15). The municipal defendants also argue that the City Comptroller's Office never in fact received a notice-of-claim form from plaintiff and that more than ninety days have passed since the date of his acquittal, thus rendering his claims against the City forever barred. (See id.). Plaintiff did not contest that assertion in his opposition. (See generally Pl.'s Opp'n to City Mot.).

57

In light of plaintiff's failure to allege that he has complied with the requirements set forth in §§ 50-i and 50-e of New York's General Municipal Law, as well as his failure to address the defendants' argument on this point in his reply, all of his state-law claims against the City should be dismissed with prejudice.[22]

### III. Plaintiff's Federal-Law Claims Against the City and Its "John Doe" Police Officers

#### A. *Bivens* Claims Against the Municipal Defendants

Plaintiff's Bivens claims are pled generally against all of the defendants. However, in his reply to the municipal defendants' motion, plaintiff concedes that this claim is cognizable solely against the federal defendants. (Pl.'s Reply to Municipal Defs.

---

[22]    The municipal defendants argue that even if plaintiff complied with the notice-of-claim rules, his false-arrest and malicious-prosecution claims would fail as a matter of law because there was probable cause for his arrest and detention. (City Mem. of Law 16). For reasons we have already discussed, this argument hinges on a factual assessment that is beyond the scope of our review in a motion to dismiss. (See supra 44 n.15). Here, plaintiff has alleged that the NYPD "knew that Plaintiff was an active informant" for the FBI, "yet sought to fabricate charges against Plaintiff by bringing false information before a federal grand jury." If those assertions are taken as true, as they must be in the context of a motion to dismiss, there is at least some question as to whether the municipal defendants in fact had probable cause for their actions against plaintiff. In any event, given plaintiff's failure to comply with New York's notice-of-claim requirements and his failure to oppose the municipal defendants' motion on that issue, his state-law claims should be dismissed.

58

5); see also Battaglia v. Cnty. of Schenectedy, 1993 WL 404096, *1 (N.D.N.Y. Sept. 29, 1993), aff'd, 22 F.3d 1092 (2d Cir. 1994) ("a Bivens-type action cannot be asserted against a municipality where an alternative remedy is available"). As such, his Bivens claims against the municipal defendants are abandoned and should be dismissed with prejudice.

## B. **Section 1983 Claims Against the Municipal Defendants**

### i. **The Adequacy Under *Monell* of the Section 1983 Claims Pled Against the City**

The municipal defendants argue that plaintiff's Section 1983 claims against the City are inadequately pled because plaintiff has failed to allege a municipal policy or custom that might give rise to City liability. (City Mem. of Law 6-8, 19-23). We agree.

As the Supreme Court has noted,

> A municipality or other local government may be liable under [Section 1983] if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (citing Monell, 436 U.S., at 665-683, 98 S.Ct. 2018). They are not vicariously liable under § 1983 for their employees' actions.

59

Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011). Generally, Section 1983 suits against a municipality require that the plaintiff (1) point to an official custom or policy of the municipal defendant and (2) establish a causal connection between the alleged injury and the adopted custom or policy. See Monell, 436 U.S. at 694; see also Walker v. City of New York, 974 F.2d 293, 301 (2d Cir. 1992) ("It is only when the municipality itself wreaks injury on its citizens that municipal liability is appropriate.").

There are four ways in which a plaintiff can establish the existence of a custom or policy sufficient to impose Section 1983 liability. First, he may point to an official policy formally adopted by the municipal defendant. Monell, 436 U.S. at 690. Second, a single unconstitutional act or decision may constitute a policy and subject a municipality to liability when such an act or decision comes from an authorized decision-maker. Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404-06 (1997); Pembaur, 475 U.S. at 481-84. However, "'a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) (quoting Ricciuti v. NYC Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991)). Third, a policy may be established by showing that the acts of the municipal agent

were part of a widespread practice that, although not expressly authorized, is so well-settled as to constitute a custom or usage with the force of law. See Brown, 520 U.S. at 403-04; City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988); Monell, 436 U.S. at 690-91. Fourth, where a municipality's failure to train or supervise its officers amounts to deliberate indifference, Section 1983 liability may be asserted against the municipality. Brown, 520 U.S. at 407; City of Canton v. Harris, 489 U.S. 378, 387-89 (1989); Cash v. Cnty. of Erie, 654 F.3d 324, 334 (2d Cir. 2011).

Vague and conclusory assertions that a municipality has a custom or policy are insufficient to make out a Monell claim, absent "'allegations of fact tending to support, at least circumstantially, such an inference.'" Zherka v. City of New York, 459 F. App'x 10, 12 (2d Cir. 2012) (quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995)); see Bolden v. Cnty. of Sullivan, 523 F. App'x 832, 834 (2d Cir. 2013); Estate of Jaquez ex rel. Pub. Adm'r of Bronx Cnty. v. City of New York, 2014 WL 2696567, *6 (S.D.N.Y. June 9, 2014).

In this case, plaintiff has failed to allege with any particularity that there was a custom or policy that contributed to the alleged violation of his rights. (See generally Compl.). Rather, the complaint states in conclusory form that the City

61

conspired with the FBI and the DOJ to deprive plaintiff of his rights and that the City failed to adequately train its officers to investigate whether a criminal suspect might be an informant prior to effecting an arrest. (See Compl. ¶¶ 47, 48, 54, 58, 60). He makes no specific allegation that might plausibly support his claim of the existence of a City policy and, notably, in his opposition papers, plaintiff cites to examples of conduct in North Carolina, not New York. (See Pl.'s Reply to City Mot. 3). Furthermore, the allegations in the complaint concern a single set of events involving actors below the policy-making level -- that is, plaintiff's arrest and prosecution. Without more, his allegations are insufficient to plead a Monell theory of liability under Section 1983. See DeCarlo, 141 F.3d at 61.

In light of the fact that the statute of limitations for Section 1983 claims in New York is three years, see Kelly v. City of New York, __ F. App'x __, 2014 WL 4071327, *1 (2d Cir. Aug. 19, 2014) (citing Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009)), as well as the fact that plaintiff's Monell claim is apparently premised on municipal policies and practices in effect at the time of his arrest in January 2009, it appears that the claim is time-barred and that any effort to amend it would be futile. For that reason, we recommend that the claim be dismissed with prejudice.

62

### ii. **The Adequacy of Section 1983 Claims Pled Against the "John Doe" Police Officers**

We note that plaintiff has failed to allege specific conduct on the part of any individual municipal employee. As such, his Section 1983 claims against the NYPD officers -- denominated as "John Doe" defendants -- cannot stand.[23] Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977).

### iii. **Section 1983 Claims Premised on False Arrest**

Even if plaintiff had adequately pled a Section 1983 claim against any of the municipal defendants premised on his arrest, the municipal defendants argue that the claim would be time-barred. (City Mem. of Law 12-13). They are correct.

In New York, the statute of limitations for Section 1983 claims is three years. Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 331 (2d Cir. 1997). In addition, as we have previously discussed with respect to the FTCA's time-bar (see supra

---

[23] In any event, those unnamed "John Doe" officers have not been sufficiently identified as required by Rule 8. See Coward v. Town & Vill. of Harrison, 665 F. Supp. 2d 281, 300 (S.D.N.Y. 2009); Kearse v. Lincoln Hosp., 2009 WL 1706554, *3 (S.D.N.Y. June 17, 2009); Feliciano v. Cnty. of Suffolk, 419 F. Supp. 2d 302, 313 (E.D.N.Y. 2005).

pp. 32-34), the accrual for a false-arrest claim under a federal law such as Section 1983 is triggered when plaintiff's detention first became subject to legal process. See Wallace, 549 U.S. at 388-390. For present purposes, we regard plaintiff's bond hearing on February 9, 2009 as the date when his false-arrest claim accrued. Accordingly, the statute of limitations on a Section 1983 claim premised on plaintiff's purportedly false arrest expired on February 9, 2012. Because plaintiff did not file his complaint in this court until May 23, 2012, that claim is time-barred and should be dismissed with leave to replead.

### iv. **Section 1983 Claim Premised on Equal Protection**

Beyond plaintiff's failure to adequately allege either personal involvement on the part of an individual municipal actor or a custom or policy that might give rise to municipal liability, the municipal defendants argue that plaintiff has not adequately pled a basis for a Section 1983 claim premised on an equal-protection violation.

To make out such a claim under the Fourteenth Amendment, a plaintiff must allege "purposeful discrimination directed at an identifiable or suspect class," Quinn v. Nassau Cnty. Police Dep't, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999), or that, as a "class of

64

one," he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

Plaintiff's complaint completely fails to set forth facts that would satisfy the Iqbal plausibility standard on his claim that he was denied equal protection. Beyond merely stating the words "equal protection," the complaint does not allege any facts that might suggest that plaintiff had been treated differently from any other person due to an impermissible motive on the part of the defendants. Accordingly, the equal-protection claim should be dismissed with leave to replead.

### v.  Section 1983 Claim Premised on Conspiracy

The municipal defendants also argue that plaintiff fails to state a claim for conspiracy under Section 1983. We agree.

To make out a claim for conspiracy under Section 1983, "a plaintiff must [plead]: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v.

Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). In this case, the complaint fails to articulate sufficient facts to make out a cognizable constitutional claim against the municipal defendants and, absent such an underlying claim, plaintiff's conspiracy claim fails as a matter of law. AK Tournament Play, Inc. v. Town of Wallkill, 2011 WL 197216, *3 (S.D.N.Y. Jan. 19, 2011), aff'd, 444 F. App'x 475 (2d Cir. 2011); see Curley v. Vill. of Suffern, 268 F.3d 65, 72 (2d Cir. 2001). Furthermore, even if plaintiff had alleged a viable claim for an underlying constitutional violation, he has not adequately alleged the elements of a conspiracy claim, as required under Iqbal. Specifically, plaintiff fails to allege facts that might support an inference that an agreement had been reached among any of the defendants to deny plaintiff his rights. His mere statement that a conspiracy existed, without more, warrants dismissal of the claim. Nat'l Cong. for Puerto Rican Rights v. City of New York, 75 F. Supp. 2d 154, 168 (S.D.N.Y. 1999) (quoting Sales v. Murray, 862 F. Supp. 1511, 1517 (W.D.Va. 1994)); Webb v. Ashburn, 1997 WL 118355, *5 (S.D.N.Y. Mar. 17, 1997).

## CONCLUSION

For the reasons discussed, we recommend that the defendants' motions be granted and that the complaint be dismissed. Specifically, we recommend that the court dismiss with prejudice:

66

(1) the Bivens and Section 1983 claims against the United States and its agencies; (2) the FTCA claims premised on false imprisonment and plaintiff's detention in the SHU; (3) the Bivens claims asserted against AUSA Roccah in her individual capacity premised on false arrest and malicious prosecution; (4) the Bivens claim against the individual FBI agents premised on false arrest; (5) all of the claims against the NYPD; (6) all of the state-law claims against the municipal defendants; (7) the Bivens claims against the municipal defendants; (8) the Monell claim against the City of New York; and (9) the Section 1983 claim against the municipal defendants premised on false arrest. We recommend that all of the other claims be dismissed with leave to replead within thirty days of dismissal.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, 500 Pearl Street, New York, New York, 10007-1312, and to the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections, both in the District Court and on later appeal to the

United States Court of Appeals. See 28 U.S.C. § 636 (b)(1); Fed.

R. Civ. Pro. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140 (1985);

DeLeon v. Strack, 234 F.3d 84, 86 (2d. Cir. 2000) (citing Small v.

Sec'y. of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).


Dated: **New York, New York**
       **August 21, 2014**


_____
**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**



Copies of the foregoing Report & Recommendation have been mailed
today to:

Lawton Wade Squires, Esq.
Mark Adam Weissman, Esq.
Herzfeld & Rubin, P.C.
125 Broad Street
New York, NY 10004

Suzanna Publicker Mettham, Esq.
New York City Law Department
100 Church Street, Room 3-200
New York, NY 10007

Rebecca Sol Tinio, Esq.
U.S. Attorney's Office, SDNY
86 Chambers Street, 3rd Floor
New York, NY 10007