UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPH S. BARONE,

                Plaintiff,

      -against-

UNITED STATES OF AMERICA, and SPECIAL
AGENTS MICHAEL GAETA, GREGORY MICELI,
and MICHAEL TROMBETTA, in their
official capacities and in their
individual capacities,

             Defendants.

---

Memorandum & Order

12cv4103 (LAK)(MHD)

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE:

Plaintiff Joseph S. Barone currently asserts seven claims in this action. Two are for malicious prosecution, one under a Bivens theory against three FBI agents, and the other against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 et seq. These claims arise from Barone's arrest and indictment in 2009 on three charges related to an alleged murder-for-insurance conspiracy. Before trial the Government dismissed a firearms charge following the trial court's granting of Barone's motion to suppress. On July 29, 2010, the jury acquitted Barone of a murder-for-hire charge and hung on a conspiracy count. The Government subsequently dismissed the conspiracy charge, thereby ending its pursuit of a conviction

1

against Barone. We assume familiarity with the facts of this matter, as the allegations in plaintiff's amended complaint and the pertinent procedural history are fully recounted in a Report and Recommendation ("R&R") issued concurrently with this order.

Defendants have moved to dismiss the amended complaint in this case, and we address that motion in our R&R. In responding to that motion, plaintiff has also moved to unseal the records of the grand jury proceeding that led to his indictment. (Pl. Oppos. 19-24).[1] While his initial motion papers -- in the form of a memorandum of law -- do not specify which materials should be unsealed, he states in his reply brief that he seeks "the identity of all grand jury witnesses, as well as testimony from Special Agent Gaeta and other FBI agents who might have testified." (Pl. Reply 6). Plaintiff asserts that these materials will support his claims of malicious prosecution by demonstrating that defendants withheld exculpatory evidence and provided false and misleading testimony in order to secure an indictment against him. (Pl. Oppos. 20-22).

Defendants oppose this motion, arguing that plaintiff has not met his burden under Douglas Oil Co. of Cal. v. Petrol Stops

---

[1] Plaintiff incorporated his motion in his initial memorandum of law, and we therefore refer to his papers in support of his unsealing request as "Pl. Oppos. __".

2

Nw., 441 U.S. 211, 223 (1979), because he has not demonstrated a particularized need for any information contained in those materials. (Def. Oppos. 3-4). Moreover, defendants argue that grand jury witnesses have absolute immunity arising from their testimony under both federal and New York state law; therefore, they say, there is no need to unseal the grand jury materials as they cannot be used in support of plaintiff's claims. (Id. at 7-8).

Plaintiff replies to defendants' objections by stating, based on Second Circuit and New York caselaw, that his case is an exception to the general bar against liability for grand jury witnesses. (Pl. Reply 1-3). His contention is based principally on the undisputed fact that his former FBI handler, Agent Presutti, testified at trial but the Government did not produce grand jury testimony from him as 3500 material, thus indicating that Agent Presutti, who was assertedly familiar with Barone's long history as a reliable confidential informant ("CI") for the FBI, had not testified at the grand jury. Plaintiff therefore infers that the Government had deliberately withheld his testimony from the grand jury because he would have revealed evidence favorable to Barone. In plaintiff's complaint, he also alleges that some grand jury witnesses perjured themselves and

that the Government concealed other exculpatory information from
the grand jury.

For the reasons explained below, we find that plaintiff has
not currently justified the relief that he seeks.

## I. Legal Standards

When seeking to unseal grand jury materials under Fed. R.
Crim. P. 6(e), the movant bears the burden of showing "that the
material [he] seek[s] is needed to avoid a possible injustice in
another judicial proceeding, that the need for disclosure is
greater than the need for continued secrecy, and that [his]
request is structured to cover only material so needed." Douglas
Oil, 441 U.S. at 222. This requirement of a showing of a
"particularized need" that outweighs the general policy to
safeguard the secrecy of grand jury proceedings is a "highly
flexible" one, In re Petition of Craig, 131 F.3d 99, 104 n.5 (2d
Cir. 1997), and the court has broad discretion in assessing such
an application. See Douglas Oil, 441 U.S. at 223 (citing
Pittsburgh Plate Glass Co. v. United States, 360 U.S. 395, 400
(1959)).

When a party moves to unseal grand jury materials to support
a claim of malicious prosecution against a grand-jury witness, we

4

are constrained by the holding in Rehberg v. Paulk and its progeny, that grand jury witnesses have absolute immunity from suit under section 1983 and Bivens for their testimony. Rehberg, 132 S. Ct. 1497, 1506 (2012); Morales v. City of New York, 752 F.3d 234, 237 (2d Cir. 2014)(extending Rehberg immunity to Bivens claims). This immunity protects a witness who has perjured himself before a grand jury, and also precludes claims based on the witness's preparation for such testimony. Rehberg, 132 S. Ct. at 1506.

However, Rehberg immunity is not all-encompassing. The Rehberg Court suggested that there were activities that a law-enforcement officer might conduct outside the grand jury proceeding -- for instance, falsifying an affidavit -- that would not be protected by absolute immunity. Id. at 1507 n.1. Additionally, there are situations in which grand jury testimony is admissible despite the Rehberg holding -- notably, when it would be used for impeachment purposes, rather than for its truth, Coggins v. Bounora, 776 F.3d 108, 113 n.8 (2d Cir. 2015)(discussing Marshall v. Randall, 719 F.3d 113, 116 (2d Cir. 2013)), or if it is used against a defendant other than the grand jury witness himself. E.g., Frederick v. City of New York, 2012 WL 4947806, *3-6, 9-10 (S.D.N.Y. Oct. 11, 2012)(analyzing Rehberg), reh. denied, 2013 WL 310441 (S.D.N.Y. Jan. 24, 2013).

In short, Rehberg and its progeny warn us that any showing of particularized need to unseal grand jury materials must be for reasons other than to discover evidence supporting a claim against a witness arising from that witness's grand-jury testimony.[2]

The rules regarding immunity from suit under the FTCA do not derive directly from the Rehberg holding. Rather, we look to state law to determine whether grand-jury witnesses are afforded immunity when the United States is sued for malicious prosecution under the FTCA. See Vidro v. United States, 720 F.3d 148, 149 (2d Cir. 2013)("As immunities and defenses are defined by the same body of law that creates the cause of action, the defenses available to the United States in FTCA suits are those that would be available to a private person under the relevant state law."). See also Maldonado v. City of New York, 2012 WL 2359836, *5 (S.D.N.Y. June 21, 2012)(citing Lego v. Stratos Lightwave, Inc., 224 F.R.D. 576, 578 (S.D.N.Y 2004); Evanko v. Elec. Sys. Assoc.,

---

[2]     In considering the distinction between pre-indictment conduct for which a law-enforcement official could be liable and grand jury testimony, for which the official is absolutely immune, the Second Circuit explained that "the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony." Coggins, 776 F.3d at 113. The Coggins court held that if the plaintiff's claim can stand "without resorting to the grand jury testimony," then a law-enforcement officer may be sued for "conduct other than [his] grand jury testimony" because that testimony "has no impact on the officer's immunity (if any) for that other conduct." Id.

Inc., 1993 WL 14458, *1 (S.D.N.Y. Jan. 8, 1993)). We are to grant absolute immunity from the state-law claim under the FTCA if we conclude that "were [New York] courts to consider the matter, they would find statements made under oath by federal grand jury witnesses to be privileged." Vidro, 720 F.3d at 151.

New York law largely parallels the federal rules with respect to malicious-prosecution claims grounded on testimony, either at trial or before a grand jury. See, e.g., Colon v. City of New York, 60 N.Y.2d 78, 82-83, 468 N.Y.S.2d 453, 455-56 (1983)("If plaintiff is to succeed in his malicious prosecution action after he has been indicted [by grand jury], he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith."); Kirchner v. County of Niagara, 969 N.Y.S.2d 277, 281-282, 107 A.D.3d 1620, 1622 (4th Dep't 2013). New York law strongly cautions against unsealing grand jury materials; however, the need "to avoid a possible injustice" in a case of malicious prosecution can be sufficient to allow for unsealing the grand jury minutes where "'plaintiffs adduce facts that strongly suggest misconduct at the grand jury sufficient to rebut the presumption of probable case if ultimately proven true.'" Vazquez v. City of New York, 2013 WL 2449181, *1 (S.D.N.Y. June 6, 2013)(quoting Frederick, 2012 WL 4947806 at *9-10). See also

Colon, 60 N.Y.2d at 82-83, 468 N.Y.S.2d at 455-56. Moreover, the violation of grand jury secrecy is of less concern when the trial on the criminal charges resulting from the grand jury deliberations is "long over and the target of the grand jury investigations is suing for malicious prosecution." Id. at *2; accord Rhooms v. City of New York, 2014 WL 4385856, *1 (E.D.N.Y. Sept. 4, 2014).

Should a request to unseal survive a Rehberg evaluation -- that is, it is brought to support a state-law claim not barred by immunity and the movant proffers sufficient circumstances that, if proven, would overcome the presumption of probable cause that accompanies a grand jury indictment -- the critical query then turns to the Douglas Oil test. 441 U.S. at 222. See also In re Petition of Craig, 131 F.3d at 104; Vazquez, 2013 WL 2449181 at *1-2. The specificity necessary to warrant unsealing requires more than mere speculation and conjecture as to what occurred in the grand jury proceedings. In re Matter of Grand Jury Minutes in U.S. v. Tam, 1997 WL 21369, *3-4 (E.D.N.Y. Jan. 9, 1997) (citing United States v. Wilson, 565 F.Supp. 1416, 436 (S.D.N.Y. 1983); United States v. Abdul-Malik, 903 F. Supp. 550, 553 (S.D.N.Y. 1995)). Moreover, the movant must demonstrate that he lacks alternative means of obtaining information central to establishing his claim. Our analysis rests on whether, without

the unsealing of grand jury evidence, "the rights of parties are effectively destroyed by inability to view key evidence." Frederick, 2012 WL 4947806 at *7.

"Malicious prosecution cases are no exception to the rule that the interests of justice may be thwarted by refusal to unseal grand jury minutes." Id. This is not to say, however, that asserting a claim of malicious prosecution is a trigger for routinely unsealing grand jury materials -- otherwise there would be no purpose to the requirement that a particularized need must be deonstrated. Id. at *8.

To justify access to grand jury materials, the movant must proffer facts "giving rise to a strong inference of misconduct". Tam, 1997 WL 21369 at *4. An "unsupported allegation" that there is "reason to believe" that misconduct occurred before the grand jury is insufficient to meet this burden. Abdul-Malik, 903 F. Supp. at 553 (citing Fed. R. Cr. P. 6(e)(3)(C)(I)). Instead, the movant must make at least a "preliminary evidentiary showing of facts concerning police behavior" to warrant potential unsealing. Frederick, 2013 WL 310441 at *3-4. Moreover, requests for wholesale disclosures are generally not allowed in civil cases. Tam, 1997 WL 21369 at *3 (citing United States v. Procter &

<u>Gamble</u>, 356 U.S. 677, 683 (1958); <u>Baker v. U.S. Steel Corp.</u>, 492 F.2d 1074, 1079 (2d Cir. 1974)).

II.      **Application**

In reviewing plaintiff's motion, we note that he offers no evidence as to any issue pertinent to an assessment of his application. His application is limited to two memoranda of law, which in turn allude to his amended complaint. For reasons that follow, we conclude that he fails to meet his burden under Douglas Oil. In explaining our conclusion, we separately address his two malicious-prosecution claims.

A.      **Plaintiff's Claim under Bivens**

Plaintiff's Bivens claim of malicious prosecution cannot be used to justify the unsealing of grand jury materials, at least as his motion is currently fashioned. Moreover, even if he could demonstrate the relationship of the requested grand jury materials to his claim, his application would fail for lack of a showing of a particularized need for these materials.

Plaintiff's factual allegations implicate the three named defendants -- agents Michael Gaeta, Gregory Miceli, and Michael Trombetta -- in violating his Fourth and Fifth Amendment rights through malicious prosecution. (Am. Compl. ¶¶ 136-46). For reasons noted in our R&R, one version of his accusations against these agents that might colorably amount to the sort of

11

misconduct that could conceivably overcome the effect of the indictment in establishing probable cause is the agents' alleged withholding from the prosecutor of documentation confirming that Barone had authority to undertake the so-called "criminal conversations" that formed the predicate for the indictment. Plaintiff entirely fails to explain how the grand jury materials are necessary to demonstrate that fact.

On the current motion, plaintiff seeks to justify unsealing by asserting that the Government withheld Agent Presutti from the grand jury in order, purportedly, to conceal the plaintiff's long-term history of functioning as an effective CI and as having been given permission to pursue the relevant "criminal conversations". (Pl. Reply 1-3, 20; Am. Compl. ¶ 75). That assertion is seemingly in some tension with the allegations in the amended complaint suggesting that the agents had in effect concealed exculpatory evidence from the prosecutor, although plaintiff may be viewed as alleging, albeit in conclusory fashion, that the defendant agents concealed from the prosecutor the relevance of potential testimony by Presutti.[3]

---

[3] Ordinarily, the decision to call or not call witnesses is made by the prosecutor, who has absolute immunity for such decisions. See Burns v. Reed, 500 U.S. 478, 485 & n.4 (1991); Imbler v. Pachtman, 500 F.2d 1301, 1302 (9th Cir. 1974) aff'd, 424 U.S. 409 (1976). See also Van de Kamp v. Goldstein, 555 U.S. 335, 343-44 (2009).

We could read plaintiff's justification alternatively, to encompass the suspicion, again conclusorily stated, that Agent Gaeta, who apparently did testify in the grand jury, perjured himself in some unstated way. Plaintiff also makes vague and conclusory allegations regarding the possible testimony of other, unnamed witnesses. In this respect he simply alleges that "[u]pon information and belief, Agent Gaeta and other Grand Jury witnesses, in bad faith, gave false and/or misleading testimony to the grand jury. . ." and that these grand jury witnesses were not called to testify at trial because the prosecutors knew that they "had offered misleading testimony to the grand jury" and wished to avoid having to turn over this portion of the testimony to the defense. (Am. Compl. ¶¶ 73-74).

All of these allegations are purely speculative and conclusory, and thus cannot justify unsealing in any event. Compare, e.g., Anilao v. Spota, 918 F. Supp.2d 157, 165-68 (E.D.N.Y. 2013)(plaintiff presented detailed history suggesting grand-jury misconduct, including state-court writ of prohibition against further prosecution); Frederick, 2012 WL 4947806 at 10 (assessing evidentiary proffer, court states that plaintiff "adduced and corroborated facts that strongly suggest misconduct at the grand jury sufficient to defeat the presumption of probable cause").

In any event, plaintiff makes no showing of any attempt to utilize normal discovery procedures. These include deposing any agents involved in the investigation concerning their relevant conduct and their grand jury testimony, if any, as well as inquiries to the United States to confirm the obvious, that Agent Presutti was not called to the grand jury. Moreover, he offers no evidence that pursuing such a route would be futile or otherwise inadequate. See, e.g., Vazquez v. City of New York, 1997 WL 736698, *1 (S.D.N.Y. Nov. 28, 1997). Compare Frederick, 2012 WL 4947806 at *10.

Given the bare nature of the plaintiff's application, as well as the broad scope of his request, it cannot be said that he has shown that his purported need for the grand jury materials outweighs the long-recognized policies underlying grand jury secrecy, including encouraging the cooperation and candor of grand jury witnesses.[4] In short, there is no currently

---

[4] The reasons for such secrecy include: "(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." United States v. Procter & Gamble Co., 356 U.S. 677, 681 n.6 (1958)(quoting United States v. Rose, 215 F.2d 617, 628-29 (3d Cir. 1954)). Although most of these concerns are inapplicable to a grand jury proceeding that has closed with an indictment, particularly following trial, the fourth -- encouraging candor by grand-jury witnesses -- is pertinent even in those circumstances. See, e.g., Anilao, 918 F. Supp.2d at 174 (quoting United States v. Sobotka, 623 F.2d 764, 767 (2d Cir.

demonstrated justification to unseal any portion of the grand-
jury materials on the basis of plaintiff's <u>Bivens</u> claim for
malicious prosecution.

### B.   Plaintiff's Claim under the FTCA

Since plaintiff's FTCA claim is governed by New York law,
<u>Rehberg</u> does not directly govern our analysis. <u>Vidro</u>, 720 F.3d at
149. Rather, we evaluate the motion under <u>Colon</u>, 60 N.Y.2d at 82-
83, 468 N.Y.S.2d at 455-56, and <u>Douglas Oil</u>, 441 U.S. at 222.
Nonetheless, our analysis tracks our assessment with respect to
the <u>Bivens</u> claim.

As is the case under federal law, under New York law "[t]he
elements of an action for malicious prosecution are (1) the
initiation of a proceeding, (2) its termination favorably to
plaintiff, (3) lack of probable cause, and (4) malice. . . ."
<u>Colon</u>, 60 N.Y.2d at 82, 468 N.Y.S.2d at 455. Also, as under
federal law, a grand-jury indictment creates a presumption of
probable cause -- "in order for a plaintiff to succeed in a
malicious prosecution claim after having been indicted, 'he must
establish that the indictment was produced by fraud, perjury, the
suppression of evidence or other police conduct undertaken in bad

---

1980); <u>In re EyeCare Physicians of America</u>, 100 F.3d 514, 518 (7th Cir. 1996)).

faith.'" <u>Rothstein v. Carriere</u>, 373 F.3d 275, 282-83 (2d Cir. 2004)(quoting <u>Colon</u>, 60 N.Y.2d at 83, 468 N.Y.S.2d at 455-56).

The presumption of probable cause is not easily rebutted: "the burden of rebutting the presumption . . . requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially[.]'" <u>Id.</u> at 284 (quoting <u>Colon</u>, 60 N.Y.2d at 82, 468 N.Y.S.2d at 455)(alteration in original). In assessing an unsealing request, then, we look first for "a showing of likely success in defeating the presumption of probable cause." <u>Frederick</u>, 2012 WL 4947806 at *9. Such a showing must involve more than a simple assertion that the movant has a pressing need for the grand-jury materials to prove bad faith or other malice in order to trump the effect of an indictment. <u>Id.</u> (citing <u>United States v. Torres</u>, 901 F.2d 205, 233 (2d Cir. 1990), <u>abrogated on other grounds by United States v. Marcus</u>, 628 F.3d 36 (2d Cir. 2010)). A suitable showing, for instance, would be a "dramatic change in the probable cause findings" between a preliminary hearing and a grand jury determination. <u>Id.</u> at *9-10 (quoting <u>Palmer v. Estate of Stuart</u>, 2004 WL 2429806, *3 (S.D.N.Y. Nov. 1, 2004) & citing <u>Brandon v. City of New York</u>, 705 F. Supp. 2d 261, 273 (S.D.N.Y. 2010)). In short, the movant must proffer specific

16

and at least colorably corroborated facts that, if proven true, would raise a strong inference of misconduct. <u>Frederick</u>, 2013 WL 310441 at *3.

Apart from that showing, the movant must demonstrate that there are no readily available alternative means for acquiring the needed information. In discussing the <u>Rothstein</u> burden, the <u>Frederick</u> Court recognized that there are potential alternatives to unsealing grand jury materials -- notably, deposing the grand jury witnesses -- and observed that such an alternative must be employed unless it can be demonstrated that such an effort would likely be a fruitless exercise due to memory lapses, inaccessibility of the witnesses or other circumstances. <u>Frederick</u>, 2012 WL 4947806 at *9 (citing cases).[5]

In an attempt to meet his burden, plaintiff relies on the allegations in his amended complaint that the Government and its agents lacked probable cause to pursue the criminal prosecution against him, but nonetheless secured an indictment by creating and providing false information while withholding "highly exculpatory evidence." (Am. Compl. ¶¶ 97-100). Plaintiff's

---

[5] The court observed that if deposing witnesses will not suffice, a policy of blanket denials of unsealing requests "would undoubtedly create a potential for injustice in some meritorious [] suits," since there would be no avenue available for a plaintiff to negate the presumption of probable cause. <u>Id.</u>

assertions about falsehoods that the Government allegedly provided to the grand jury lack any specificity; indeed, they are plainly based on unadulterated speculation. (See, e.g., Am. Compl. ¶¶ 65-66). As for what information the Government allegedly withheld from the grand jury, he asserts that the prosecutor did not call his FBI "handler" of 18 years, Agent Presutti, to testify. Had the Government done so, he alleges, Agent Presutti would have testified 1) that plaintiff had served the FBI "loyally and valiantly" for over 18 years, 2) that the "criminal conversations" at the heart of the Government's indictment were undertaken with the authorization of the FBI, 3) that he had not engaged in violence in his tenure as an informant, and 4) that he was "innocent of the crimes" charged. (Id. at ¶¶ 67-75). Plaintiff alleges that had the Government not withheld this information, he would not have been indicted. (Id. at ¶ 76).

This set of allegations falls well short of justifying the unsealing of the grand jury minutes. First, he has failed to make a colorable showing (or indeed any) of fraud, prejudice or other facts raising the strong inference of misconduct underlying the grand jury indictment. Second, he fails to demonstrate that he cannot derive the relevant facts using the usual tools of discovery.

Plaintiff asserts two independently verifiable facts -- that the prosecution's disclosures at trial of prior witness testimony did not include any grand jury testimony from Mr. Presutti (by then retired) and that Mr. Presutti was a Government witness at trial -- and from these two facts he infers that the defendants intentionally kept Mr. Presutti and his potentially exculpatory testimony from the grand jury and did so in bad faith. (Id. ¶¶ 68, 71-72). This hardly amounts to even a colorable showing of misconduct in the grand jury. The prosecutor was free to use an active agent -- whether a case agent or another representative -- to convey whatever information was deemed relevant for the grand jurors' consideration. The fact that a retired agent was not called does not meaningfully suggest impropriety, much less fraud. Moreover, it bears noting that Agent Presutti testified for the Government at trial, and yet plaintiff omits any indication of the substance of his testimony on that occasion, thus failing to support his assumption that, if called at the grand jury, the agent would have exculpated him.[6]

The bulk of the plaintiff's other allegations, most of which pertain to his assertion that defendants manufactured false

---

[6] We note in this respect that Judge Buchwald denied a fee motion by plaintiff after trial and, in doing so, seemed to indicate that Agent Presutti had in fact denied that Barone had told him of the contacts relating to the alleged murder-for-hire plot or that he was authorized by the FBI to engage in the contacts that formed the basis for the charges against him. United States v. Barone, 2011 WL 4056903, *4, 6 (S.D.N.Y. Aug. 29, 2011).

evidence to secure an indictment against him, are made "upon information and belief". Moreover, as noted, to the extent that he suggests that Agent Gaeta or others may have perjured themselves, he offers no details at all.

In short, the subset of allegations related to the Government having kept Mr. Presutti from the grand jury, and plaintiff's conclusory assertion about perjury do not create the "compelling case" needed to justify unsealing. See Frederick, 2012 WL 4947806 at *9 (quoting Palmer, 2004 WL 2429806 at *3).[7] Given the absence of any substantive basis for plaintiff's contention that the requested materials are likely to support his contention of misconduct in connection with grand jury's return of an indictment,[8] unsealing cannot be justified.

---

[7] In Frederick, for instance, the court granted an in camera review of the grand jury minutes in anticipation of unsealing some portion of the materials because the plaintiff had produced affidavits that were more recent than other evidence and that offered support for his allegations regarding misconduct at the grand jury. Id. at *10. He had also demonstrated that the key witness had an unreliable memory, making a deposition futile. Id. Such evidence in support of a motion to unseal is a far more substantial showing than the inferences plaintiff here makes thus far.

[8] We have recommended that the malicious-prosecution claim against the individual agents survive dismissal, but that proposed ruling is not inconsistent with our present decision. The 12(b)(6) analysis relies solely on the face of the complaint and does not require -- or permit -- an assessment of any evidence. In the case of an unsealing motion, however, as noted, the plaintiff may not rest on the bare allegations of his pleading.

In addition, plaintiff has not shown any inability to acquire necessary evidence by deposing grand jury witnesses, others engaged in that stage of plaintiff's criminal prosecution, and those who were allegedly kept from the grand jury. He has not shown that witness inaccessibility, memory failures or other circumstances have rendered futile any alternative means to gain that information. See Velasquez v. City of New York, 1997 WL 736698, *1 (S.D.N.Y. Nov. 28, 1997)("[Courts] have repeatedly declined to permit disclosure of grand jury material without a showing of a witness's inability to remember events at a subsequent proceeding or actual inconsistencies between the grand jury testimony and subsequent testimony.")(citing cases).

Since plaintiff's showing at this early stage of the litigation is insufficient to demonstrate a colorable case for rebutting the presumption of probable cause, we need not evaluate in depth the second prong of the Douglas Oil test -- whether plaintiff's need to avoid an injustice outweighs the need for secrecy in grand jury proceedings. 441 U.S. at 222. As noted, at the very least the concern for avoiding any discouragement of candor by grand jury witnesses is a pertinent consideration, and hence unsealing is not granted simply because a plaintiff pleads a malicious- prosecution claim and asserts in conclusory terms that law-enforcement misconduct triggered his indictment.

21

CONCLUSION

In sum, we deny plaintiff's motion to unseal grand-jury materials. The denial is without prejudice to renewal on a proper showing of relevance and need.

Dated: New York, New York
       October 29, 2015

SO ORDERED.

_____
MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE