UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSEPH S. BARONE,

                              Plaintiff,


              -against-                                                12-cv-4103 (LAK)


UNITED STATES OF AMERICA, et al.,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OPINION**


                Appearances:


                        Mark A. Weissman
                        Lawton W. Squires
                        HERZFELD & RUBIN, P.C.
                        *Attorneys for Plaintiff*


                        Rebecca S. Tinio
                        Assistant United States Attorney
                        PREET BHARARA
                        UNITED STATES ATTORNEY


LEWIS A. KAPLAN, *District Judge*.

                Plaintiff Joseph S. Barone brings this action against the United States and three

special agents of the Federal Bureau of Investigations ("FBI") to recover damages relating to, among

other things, the alleged wrongful disclosure of plaintiff's status as an FBI confidential informant

("CI"), malicious prosecution, and wrongful confinement of the plaintiff in the Special Housing Unit

("SHU") of the prison in which he was incarcerated pending trial. Plaintiff's initial *pro se* complaint

2

was dismissed without prejudice to repleading certain claims.[1]  He filed an amended complaint on

October 10, 2014 in which he now asserts seven claims.  Five are asserted against the United States

under the Federal Tort Claims Act ("FTCA"), namely, (1) malicious prosecution, (2) intentional

infliction of emotional distress ("IIED"), (3) negligent infliction of emotional distress ("NIED"), (4)

*prima facie* tort, and (5) negligence.  Two claims are asserted against the three individual FBI agent

defendants (the "FBI Defendants") pursuant to *Bivens v. Six Unknown Named Agents of the Federal

Bureau of Narcotics*,[2] one for (6) malicious prosecution and the other for (7) denial of due process

based on plaintiff's placement in the SHU.

The defendants moved to dismiss the amended complaint pursuant to Rule 12(b)(6).

On October 29, 2015, Magistrate Judge Dolinger issued a Report and Recommendation (the "R&R")

in which he recommended granting the motion with respect to plaintiff's FTCA claims for IIED,

NIED, *prima facie* tort, and negligence, the latter without prejudice.  He recommended also that the

Court deny defendants' motion with respect to plaintiff's FTCA claim for malicious prosecution and

both *Bivens* claims.  Both parties filed objections.

The Court has considered carefully the parties' moving papers, the comprehensive

R&R, and the objections to it.  It adopts the R&R to the extent that the R&R recommends: (1)

dismissing the FTCA claims for NIED and negligence, and (2) denying the motion to dismiss the

FTCA and *Bivens* claims for malicious prosecution.  It assumes familiarity with the R&R and

addresses plaintiff's three remaining claims below.

---

[1]

See *Barone v. United States*, No. 12-cv-4103 (LAK), 2014 WL 4467780 (S.D.N.Y. Sept. 10, 2014).

[2]

403 U.S. 388 (1971).

Bivens *Claim for Denial of Due Process*

Plaintiff alleges that he was placed in the SHU against his will for approximately fifteen months while incarcerated in the Metropolitan Detention Center in Brooklyn, New York – a facility operated by the Bureau of Prisons ("BOP").  He asserts that this placement lacked any disciplinary or administrative justification and, further, that he was denied his right to challenge his placement at a hearing, in violation of BOP regulations and due process.[3]

Barone's placement allegedly was orchestrated by the FBI Defendants who, he claims, "ordered BOP officers to incarcerate Plaintiff in the SHU, against his will, solely to further their malicious scheme to punish him."[4]  Plaintiff alleges also, seemingly in the alternative, that to whatever extent he was housed in the SHU to protect him from the general prison population because of his status as a mob informant, this, too, was orchestrated by the FBI Defendants, who allegedly leaked Barone's CI status "solely for the purpose of punishing him."[5]

To state a due process claim based on pretrial conditions of confinement, a plaintiff "must plausibly plead that Defendants, (1) with punitive intent, (2) personally engaged in conduct that caused the challenged conditions of confinement."[6]  The magistrate judge concluded that the plaintiff here sufficiently pled such a claim based on the allegations that the FBI Defendants

---

[3]     *See* Am. Compl. [DI 52] ¶¶ 85-92, 147-56.

[4]     *Id.* ¶ 89.

[5]     *See id.* ¶ 90.

[6]     *Turkmen v. Hasty*, 789 F.3d 218, 237-38 (2d Cir. 2015).

"instructed officials of the BOP to confine [plaintiff] in the SHU" and thus "engineered" plaintiff's confinement "for punitive purposes and not for a legitimate end."[7]  The Court is skeptical, however, that the plaintiff asserts this claim against the proper defendants.  The United States Code and Code of Federal Regulations delegate operation of the SHU, including decisions about placement in and release from the SHU, to the BOP, subject to the direction of the Attorney General.[8]  There is no suggestion that the FBI or any of its agents has legal authority in the process.  Nonetheless, the Court is persuaded that the plaintiff has stated a claim on the alternate theory that the FBI Defendants purposefully and punitively leaked Barone's CI status which, in turn, caused the general prison population to be unsafe for Barone and necessitated his confinement in the SHU.[9]  Accordingly, the Court need not determine whether the amended complaint states a claim against the FBI Defendants under *Turkmen*[10] on the theory accepted in the R&R.  Defendant's motion to dismiss this claim is denied.

*FTCA Claim for IIED*

Plaintiff's IIED claim is based on the entirety of the FBI Defendants' alleged retaliatory conduct, including their role in (1) leaking plaintiff's status as a mob informant, (2) arresting and then aiding in the prosecution of the plaintiff for a crime they knew he did not commit

---

[7]     R&R [DI 72] at 36-37.

[8]     *See* 28 C.F.R. § 541.20-33; 18 U.S.C. § 4042(a)(1)-(3).

[9]     *See* Am. Compl. ¶ 90.

[10]    *See supra* note 6.

5

both by withholding exculpatory evidence from prosecutors and providing false or misleading testimony before the grand jury and then again in Barone's criminal trial, and (3) causing plaintiff to be incarcerated in the SHU for fifteen months against his will.[11]  The magistrate judge recommended dismissing this claim on the ground that it is time-barred because each of these alleged acts took place before June 6, 2009, the undisputed limitations bar date.[12]  Plaintiff objects. He argues that this claim is timely and that the United States is liable for the entire tortious course of conduct under the continuing tort doctrine because the last actionable act occurred after the bar date.

        As an initial matter, the Court is persuaded that the continuing tort doctrine applies to IIED claims under New York law.  Indeed, several courts in this district have held that "'claims for IIED that allege a continuing pattern and practice of actionable behavior may invoke the continuing tort doctrine to provide an exemption from the statute of limitations where the "last actionable act" of the alleged course of conduct falls within the statute of limitations.'"[13]

        The next questions, then, are whether the last alleged act occurred after the June 6, 2009 bar date and, if so, whether it was part of an ongoing pattern of conduct.  Again, the Court is persuaded that the amended complaint so alleges.  Plaintiff alleges that the FBI Defendants "caused a criminal trial to be commenced *and maintained* against Plaintiff" by, among other things,

---

[11]

        *See* Am. Compl. ¶ 105.

[12]

        R&R at 55-58; *see* 28 U.S.C. § 2401(b) (FTCA two year statute of limitations).

[13]

        *Lucas v. Novogratz*, No. 01-cv-5445 (GEL), 2002 WL 31844913, at *7 (S.D.N.Y. Dec. 18, 2011) (quoting *Neufeld v. Neufeld*, 910 F. Supp. 977, 983 (S.D.N.Y. 1996)); *see also Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 384 (S.D.N.Y. 2005); *Bonner v. Guccione*, 916 F. Supp. 271, 277 (S.D.N.Y. 1996).

6

providing false and misleading testimony during the trial, during which time the agents also withheld exculpatory evidence from federal prosecutors and the court.[14]  The latest of these acts is said to have occurred after the bar date.  Indeed, Barone's criminal trial allegedly did not even begin until July 2010, over a year past the bar date.[15]

Several courts in this circuit have sustained IIED claims at the motion to dismiss stage based on similar allegations.  For example, in *Samtani v. Cherukuri*,[16] the court held that allegations that "the defendants intentionally caused the plaintiff emotional distress by participating in the continued unfounded prosecution of the plaintiff, or at least by deliberately continuing to withhold material information," were "sufficient[ to] allege a continuing tort that did not end until the District Attorney dismissed the charges against the plaintiff."[17]

The amended complaint here alleges further that this conduct was part of a continuing series of retaliatory threats and harassment directed at plaintiff, including arresting, indicting, and prosecuting the plaintiff without probable cause, leaking plaintiff's status as a mob informant, and forcing plaintiff to be housed in the SHU.  "[W]here a plaintiff is the target of a planned program of harassment or threats, accompanied by vindictiveness, taunting or derision, and this course of

---

[14]

      *See* Am. Compl. ¶ 105 (emphasis added).

[15]

      *See United States v. Barone*, 09-cr-91 (NRB), Minute Entry dated July 19, 2010.

[16]

      No. 11-cv-2159 (CBA), 2012 WL 1821413 (E.D.N.Y. May 18, 2012).

[17]

      *Id.* at *2; *see also Llerando-Phipps*, 390 F. Supp. 2d at 384-85 (applying the continuing tort doctrine in holding that a IIED claim was timely when asserted against police officers alleged to have falsified evidence against plaintiff, and that the limitations period ran from the date charges against plaintiff were dropped because the "last actionable act" under the doctrine was "the continuation of the prosecution despite the lack of probable cause.").

conduct falls within the limitations period, a cause of action for intentional infliction of emotional distress that includes the entire course of conduct may be established."[18]   Accordingly, accepting plaintiff's allegations as true for the purposes of this motion, the claim for IIED under the FTCA is timely.

Even if the claim is timely, defendants argue, plaintiff fails to state a legally sufficient IIED claim because the allegations in the amended complaint are "too vague" to meet the rigorous standard for IIED liability.[19]   The Court disagrees.  Plaintiff alleges that the defendants, among other things, deliberately and maliciously arrested and prosecuted him for serious felonies despite knowing his innocence.  The Court cannot now say that a jury could not reasonably find the United States liable for this conduct on an IIED theory if these allegations were proven at trial.  This conduct, if it occurred, arguably would have been "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'"[20]   Accordingly, defendants' motion to dismiss this claim will be denied.

*FTCA Claim for* prima facie *tort*

The *prima facie* tort claim is based on the same alleged tortious conduct as the IIED claim.  Indeed, it appears that plaintiff simply cut and pasted the allegations from the IIED section

---

[18]   *Bonner*, 916 F. Supp. at 277 (internal quotation marks and citations omitted).

[19]   Defendants' Responses to Plaintiff's Objections to the R&R [DI 78] at 8-9.

[20]   *Id.* (quoting *Cruz v. HSBC Bank USA, N.A.*, 586 F. App'x 723, 725-26 (2d Cir. 2014)).

8

of his complaint into the *prima facie* tort section.[21]  The magistrate judge recommended dismissing

this claim based on the same statute of limitations analysis he applied to the IIED claim.  For the

reasons expressed above, however, the Court concludes that this claim, assuming the truth of

plaintiff's allegations, cannot be dismissed as untimely.

   The Court next considers whether the claim should be dismissed as duplicative.

Some courts in this circuit have dismissed *prima facie* tort claims as duplicative of IIED claims on

the simple basis that "[a] duplicative prima facie tort claim must be dismissed."[22]  On the other hand,

the New York Court of Appeals stated, albeit thirty years ago and in somewhat puzzling terms, that

"where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative

relief, a cause of action for prima facie tort."[23]  The close question here is whether, on the face of

this complaint, the duplicative nature of this claim is fatal.  The Court, however, need not answer

that question because plaintiff's *prima facie* tort claim fails for independent reasons.

   "The requisite elements of a cause of action for prima facie tort are (1) the intentional

infliction of harm, (2) which results in special damages, (3) without any excuse or justification, (4)

by an act or series of acts which would otherwise be lawful."[24]  Here, the alleged series of tortious

acts is that the defendants (1) forced plaintiff to make monitored phone calls to violent mobsters

based on threats that defendants would prosecute plaintiff and leak his CI status if he refused, (2)

---

[21] *Compare* Am. Compl. ¶ 105, *with id.* ¶ 120.

[22] *Rother v. N.Y. State Dep't of Corrections and Cmty. Supervision*, 970 F. Supp. 2d 78, 106 (N.D.N.Y. 2013).

[23] *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143 (1985).

[24] *Id.* at 142-43.

leaked plaintiff's CI status, (3) caused plaintiff to be prosecuted for a crime he did not commit by testifying falsely and withholding exculpatory evidence from prosecutors and the court, and (4) caused plaintiff to be housed in the SHU for fifteen months while awaiting trial.[25]

As an initial point, the allegation that defendants drove and maintained a criminal prosecution against plaintiff by testifying falsely and withholding exculpatory evidence cannot support a *prima facie* tort claim because that is not conduct "which would otherwise be lawful."

The remaining allegations fail to state a *prima facie* tort claim because plaintiff has not alleged sufficiently that they resulted in special damages. Special damages – a "critical element of the cause of action"[26] – are damages that are "alleged with sufficient particularity to identify actual losses and [that are] related causally to the alleged tortious acts."[27] They must be "fully and accurately stated"[28] and cannot be "conjectural in identity and speculative in amount."[29] Allegations that simply consist of "round sums without any attempt at itemization are insufficient."[30]

The special damages allegedly suffered by plaintiff include (1) the cost of his legal

---

[25] Am. Compl. ¶ 120.

[26] *Freihofer*, 65 N.Y.2d at 143.

[27] *Epifani v. Johnson*, 65 A.D.3d 224, 233, 882 N.Y.S.2d 234, 242 (2d Dep't 2009) (quotation marks omitted).

[28] *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 400-01 (S.D.N.Y. 2007) (quotation marks omitted).

[29] *Vigoda v. DCA Prods. Plus Inc.*, 293 A.D.2d 265, 266, 741 N.Y.S.2d 20, 22-23 (1st Dep't 2002).

[30] *Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 306 (S.D.N.Y. 2005) (quotation marks omitted).

defense in the criminal trial of "at least $415,000.00," (2) lost income "valued at not less than $825,000.00," (3) "the value of Plaintiff's equity in his former home of not less than $500,000, which home Plaintiff was forced to sell in a depressed market solely to escape mob retribution against him," and (4) medical expenses "in the amount of at least $4,000.00."[31]

Most of these alleged losses are not special damages because they are nothing more than "round sums without any attempt at itemization."  Indeed, the First Department recently affirmed dismissal of a *prima facie* tort claim despite the plaintiff's sworn statement that she "incurred moving expenses in excess of Fifteen Thousand Dollars."[32] The court explained that "such round figures, with no attempt at itemization, must be deemed to be a representation of general damages."[33] So too, here.

The special damages allegations fail for additional reasons as well.  As an initial matter, "[l]ost income does not qualify as special damages."[34] The alleged losses plaintiff seeks with respect to the sale of his home are too speculative to constitute special damages.  Among other

---

[31]   Am. Compl. ¶ 123.

[32]   *Phillips v. N.Y. Daily News*, 111 A.D.3d 420, 421, 974 N.Y.S.2d 384, 386 (1st Dep't 2013) (quotation marks omitted).

[33]   *Id.* (quotations marks omitted); *cf. Gordon v. Softech Int'l, Inc.*, 828 F. Supp. 2d 665, 677 (S.D.N.Y. 2011) (denying summary judgment dismissal of *prima facie* tort claim where plaintiff "submitted an (unrebutted) accounting . . . indicating that [plaintiff's] economic damages are $2,213,627"), *vacated in part on other grounds*, 726 F.3d 42, 47 n.2 (2d Cir. 2013) (denial of summary judgment on *prima facie* tort claim not appealed).

[34]   *Vasarhelyi v. New School for Social Research*, 230 A.D.2d 658, 660, 646 N.Y.S.2d 795, 796 (1st Dep't 1996); *see also Vigoda*, 293 A.D.2d at 266, 741 N.Y.S.2d at 23 ("All that plaintiffs have alleged is lost future income, conjectural in identity and speculative in amount. As such, this is an insufficient allegation of damages to support a cause of action for prima facie tort.").

things, had plaintiff not been forced to sell his house as alleged, the value of his home may have

gone down further, or he may have sold for other reasons at an even more deflated price.  Further,

the $500,000 plaintiff seeks for his home sale – the value of plaintiff's alleged equity in the home

– is not "fully and accurately stated," as the complaint gives no indication of the actual purchase or

sale price or the proceeds plaintiff received from the sale.  Finally, the damages plaintiff seeks for

out-of-pocket medical expenses are not tied causally to any particular conduct, much less conduct

that otherwise would be lawful and, in any event, are insufficiently itemized to state a *prima facie*

tort claim.

   Accordingly, the amended complaint fails state a claim for *prima facie* tort.


            *Conclusion*

   For the reasons stated above and in the R&R, defendants' motion to dismiss the

amended complaint [DI 57] is granted to the extent that plaintiff's FTCA claims for (1) NIED, (2)

*prima facie* tort, and (3) negligence are dismissed.  The motion is denied in all other respects.

Plaintiff may move for leave to amend provided he does so within thirty days of the date hereof.


   SO ORDERED.

Dated:   May 5, 2016

               _____

               Lewis A. Kaplan
               United States District Judge